135 P.3d 82

TRI–S CORPORATION and Karl Milton Taft, Plaintiffs–Appellees,

and

Charles L. Rapoza, Sr., Individually and as Special Administrator of the Estate of Charles L. Rapoza, Jr., Deceased; Charla Pua Lindsey, as Next Friend of Chae–Lynn Kealapua Lindsey; Theresa Holicek; and Casey Souza, Plaintiffs In Intervention–Appellees,

v.

WESTERN WORLD INSURANCE COMPANY; John Does 1–10; Doe Partnerships 1–10; Doe Corporations 1–10; and Doe Entities 1–10, Defendants–Appellants.

Western World Insurance Company, Third–Party Plaintiff–Cross–Appellee,

v.

The Travelers Insurance Company; John Does 1–10; Jane Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Roe Non-profit Corporations 1–10; and Roe Governmental Agencies 1–10, Third–Party Defendant–Cross–Appellant.

No. 26202.

Supreme Court of Hawai'i.

May 18, 2006.

476

John H. Price, Honolulu, and Amanda J. Weston, on the briefs, for defendant-appellant/third-party plaintiff-cross-appellee Western World Insurance Company.

Jeffrey H.K. Sia and Steven L. Goto, Honolulu, (of Ayabe, Chong, Nishimoto, Sia & Nakamura), on the briefs, for third-party defendant-cross-appellant The Travelers Insurance Company.

Raymond K. Hasegawa, Hilo, Bert S. Sakuda, Honolulu, and Paul K. Hamano, on the briefs, for plaintiffs-appellees TRI–S Corporation and Karl Milton Taft.

George W. Ashford, Kailua, (of Ashford & Associates), on the briefs, for plaintiffs in intervention-appellees Charles L. Rapoza, Sr., individually and as special administrator of the Estate of Charles L. Rapoza, Jr., Deceased; Charla Pua Lindsey, as Next Friend of Chae–Lynn Kealapua Lindsey; Theresa Holicek; and Casey Souza.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY JJ.; and Circuit Judge HIFO, in place of ACOBA, J., Recused.

Amended Opinion of the Court by
DUFFY, J.

The instant declaratory judgment action concerns an insurance coverage dispute arising out of a wrongful death action brought following the 1994 work-related death of Charles L. Rapoza, Jr. (Rapoza). Defendant–Appellant/Third Party Plaintiff–Cross Appellee Western World Insurance Co. (WWI) appeals from the October 10, 2003 final judgment of the Circuit Court of the Third Circuit[1] in favor of Plaintiffs–Appellees Tri–S Corporation (Tri–S) and Karl Milton Taft [hereinafter individually, Taft, and collectively with Tri–S, TSC–Taft] and Plaintiffs in Intervention–Appellees Charles L. Rapoza, Sr., et al. [hereinafter, Rapoza Estate,[2] and collectively with TSC–Taft, Plaintiffs]. Defendant/Third–Party Defendant–Cross Appellant The Travelers Insurance Co. (Travelers) cross-appeals from the same judgment.

*The WWI Appeal*

On appeal, WWI argues that the circuit court erred in: (1) granting summary judgment on May 12, 1998 in favor of Plaintiffs and against WWI when there were genuine issues of material fact, including (a) whether Taft had been sued as a co-employee of Rapoza or executive officer of Tri–S, and (b) whether Taft had a reasonable expectation of coverage under Tri–S's comprehensive general loss (CGL) insurance policy issued by WWI; (2) concluding that Taft was an "insured" as defined in the CGL policy; (3) concluding that no exclusion to coverage applied; (4) concluding that "occurrence" as defined in the CGL policy included "wilful and wanton misconduct"; (5) concluding that WWI breached its duty to defend Taft in the underlying wrongful death action and thus was obligated to reimburse TSC–Taft for its share of $124,644.07 in attorney's fees and costs expended by TSC–Taft in defending that suit and prosecuting the instant declaratory judgment action; (6) concluding that WWI had not rebutted the presumption that Taft was covered under the CGL policy and thus WWI had a duty to indemnify Taft for special and general damages for which he might be held liable in the underlying action; (7) denying WWI's motion for reconsideration on July 13, 1998 on the grounds that WWI had failed to present any new evidence that could not have been presented in the original motion; and (8) calculating and awarding prejudgment interest accruing from September 6, 2000 even though there was no showing of unreasonable delay by WWI and Travelers in moving to judgment. Accordingly, WWI prays that the judgment below be vacated and remanded with directions to enter judgment in favor of WWI.

TSC–Taft responds that the circuit court did not err with respect to any of the points presented by WWI and thus the judgment below should be affirmed. The Rapoza Estate, in a separate answering brief, essentially seconds the defense of the circuit court judgment mounted by TSC–Taft. Finally, Travelers also takes issue with WWI's appeal, although only to the extent WWI raises "any suggestion, inference, or implication ... that Travelers somehow provides ... coverage for Taft with respect to the claims asserted against him[.]"

*The Travelers Cross–Appeal*

In its cross-appeal, Travelers contends that the circuit court erred in: (1)(a) concluding in its May 12, 1998 summary judgment order that Taft was sued as a co-employee of Rapoza, and (b) applying that conclusion to Travelers when Travelers was not a party to the lawsuit in 1998 and did not have an opportunity to be heard on the issue; (2) concluding that Taft had a reasonable expectation of coverage under Tri–S's worker's compensation and employer's liability insurance policy issued by Travelers; (3) granting WWI's motion for leave to file a third-party

---

1. The Honorable Riki May Amano presided over this matter from 1997 to 2002. The Honorable Terence T. Yoshioka presided over this matter in 2003.

2. Rapoza Estate is used herein to refer collectively both to the plaintiffs in intervention in the instant case as well as the plaintiffs in the underlying wrongful death suit.

complaint for indemnification and contribution against Travelers; (4) granting TSC–Taft's motion to certify Doe Corporation (*i.e.*, the motion to add Travelers as a direct defendant); (5) granting summary judgment on May 7, 2001 in favor of Plaintiffs and WWI and against Travelers when there were genuine issues of material fact, including how much of Tri–S's stock Taft held at the time of Rapoza's death; (6) concluding that (a) Article 19, Section 2 of Tri–S's bylaws requires that the corporation indemnify Taft as a director and officer for all liability in connection with the death of Rapoza, and (b) Taft properly tendered the defense of his indemnity claim to Travelers; (7) concluding that Travelers breached a duty to defend and indemnify Taft for fees, costs, and damages in connection with the wrongful death action and thus was obligated to reimburse TSC–Taft for its share of $124,644.07 attorney's fees and costs expended by TSC–Taft in defending that suit and prosecuting the instant declaratory judgment action; and (8) calculating and awarding prejudgment interest accruing from September 6, 2000 even though there was no showing of unreasonable delay by Travelers in moving to judgment. Therefore, like WWI, Travelers asks this court to vacate the judgment below and remand for entry of judgment in its favor.

TSC–Taft again counters that the judgment below was correct and should be affirmed. The Rapoza Estate joins in the answering brief of TSC–Taft on cross-appeal. WWI did not file an answering brief to Travelers' opening brief on cross-appeal.

Based on the following, we affirm the circuit court's final judgment in favor of Plaintiffs and against WWI, but vacate the judgment against Travelers and remand for entry of judgment in favor of Travelers and against Plaintiffs and WWI.

**3.** HRS § 386–5 states in relevant part:
The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or other-

## I. *BACKGROUND*

The instant appeal, No. 26202, relates to an appeal decided by memorandum opinion of this court on January 2, 2004 in *Rapoza v. Willocks Constr. Corp.* [hereinafter, *Willocks* ], No. 22052, 103 Hawai'i 399, 83 P.3d 114, 2004 WL 27460 (Jan. 2, 2004). This court's previous opinion dealt with the wrongful death action resulting from Rapoza's electrocution, while the present case deals with the insurance coverage dispute connected thereto. Accordingly, this opinion briefly sets forth facts taken from the opinion in No. 22052 in addition to the background of the instant appeal.

### A. *Facts in Willocks*

On November 16, 1994, Rapoza, a construction worker employed by Tri–S, was killed as a result of electrical discharge from high voltage power lines located in close proximity to his work site in North Kona, Hawai'i. *Willocks,* 2004 WL 27460, at *1 (Acoba, J., announcing the judgment of the court). On February 12 and November 15, 1996, the Rapoza Estate filed wrongful death actions (the suits were subsequently consolidated) sounding in negligence against various parties including Taft, the owner-president of Tri–S. *Id.* at *3. Tri–S itself, however, was not named as a defendant, presumably because it was immune from suit due to the worker's compensation exclusivity provision of Hawai'i Revised Statutes (HRS) § 386–5 (1993).[3] *Id.* The suit alleged that Taft had a duty to provide a safe workplace for Rapoza and wilfully and wantonly breached that duty by failing to implement certain safety standards. *Id.* at *4. Therefore, the Rapoza Estate alleged, Taft was liable in tort for Rapoza's death as a co-employee under the exception to worker's compensation exclusivity found in HRS § 386–8 (1993).[4] *Id.*

wise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

**4.** HRS § 386–8 states in relevant part that "[a]nother employee of the same employer shall not be relieved of his liability as a third party, if the

Specifically, the Rapoza Estate made, *inter alia*, the following allegations against Taft:

31. At all material times, Defendant Karl Taft was employed as president and manager of Tri–S, and was a fellow employee of [Rapoza].

32. At all material times, Tri–S had a duty to provide a safe work site to its employee, [Rapoza]. . . .

33. At all material times, Taft's duties at Tri–S included (1) responsibility for its compliance with [Hawai'i safety laws and construction standards]; (2) ensuring that Tri–S employees have a safe work site; and (3) planning, scheduling, coordinating, and supervising the employment activities of his fellow employees at Tri–S, including . . . [Rapoza].

. . . .

37. At all material times, Taft knew that serious bodily injury or death to [Rapoza] was the highly probable result of contact by, or close proximity of, Tri–S's drill rig with the high voltage line which caused [Rapoza's] death, unless [proper safety precautions] were taken.

38. It was the duty and responsibility of Taft, as manager of Tri–S, to implement the foregoing [safety standards] and and [sic] to ensure that the necessary special safety precautions were taken at the work site where [Rapoza] was electrocuted, in order to prevent serious bodily injury or death to [Rapoza].

39. Taft consciously and wilfully failed to implement the foregoing [safety standards], and to ensure that the foregoing special safety precautions were taken, in spite of his knowledge that serious bodily injury or death to [Ra-

poza] was the highly probable result of such failure.

40. Taft's failure to . . . ensure that the foregoing special safety precautions were taken was a direct and proximate cause of [Rapoza's] death, and the damages and injuries to the Plaintiffs herein.

41. Taft's failure to . . . ensure that special safety precautions were taken, in conscious and wilful disregard for the high probability of [Rapoza's] serious bodily injury or death as a result of such failure, constituted wilful and wanton misconduct within the meaning of [HRS § ] 386–8.

. . . .

101. As a direct and proximate result of the negligence and wilful and wanton misconduct of the Defendants, [Rapoza] suffered [damages].

On December 29, 1997, the circuit court orally granted Taft's motion for summary judgment, finding that he could not be sued under HRS § 386–8. *Willocks,* 2004 WL 27460, at *3. The circuit court found that Taft was neither present at the work site on November 16, 1994, nor involved in the direction of Rapoza's work that day. *Id.* at *3–*4. The circuit court also reasoned that because Taft was the sole owner of Tri–S, he was effectively the employer of Rapoza and not a co-employee as defined by HRS § 386–1 (1993).[5] *Id.* at *4. As such, the circuit court concluded that he was immune from suit under HRS § 386–5, and entered an order to that effect on February 13, 1998. *Id.* at *3.

On appeal, we vacated the circuit court's summary judgment order in favor of Taft. *Id.* at *17. This court rejected the circuit court's conclusion that Taft was the employer of Rapoza and instead stated that "Tri–S and not Taft was the employer of Rapoza." [6] *Id.* at *5.

personal injury is caused by his wilful and wanton misconduct."

5. HRS § 386–1 states in relevant part as follows: "Employee" means any individual in the employment of another person.
. . . .
"Employment" does not include the following service:

. . . .
(8) Service performed by an individual for a corporation if the individual owns at least fifty per cent of the corporation[.]

6. There was, however, no holding of the court with respect to this or any other issue in No. 22052; none of the other four justices of this court joined Justice Acoba's memorandum opin-

B. *Background of the Instant Case, No. 26202*

Faced with the wrongful death suit brought by the Rapoza Estate, Taft first asked WWI, Tri–S's commercial insurer, to defend him, but WWI refused by letters dated December 19, 1996 and May 1, 1997 on the grounds that the Tri–S CGL policy did not provide coverage based on the facts alleged in the wrongful death complaint. In relevant part, Tri–S's CGL policy from WWI provided as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured [Tri–S] shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy....

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

. . . .

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages....

. . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" . . .

. . . .

2. Exclusions.

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured....

. . . .

d. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e. Employer's Liability

"Bodily injury" to:

(1) An employee of the insured arising out of and in the course of:

(a) Employment by the insured; or

. . . .

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

. . . .

SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

. . . .

c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liabilities as stockholders.

2. Each of the following is also an insured:

a. Your "employees," other than your "executive officers," but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

(1) "Bodily injury" or "personal injury":

(a) To you . . . or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

. . . .

ion, although each concurred in the result. *Id.* at *17.

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

7. Separation Of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

 a. As if each Named Insured were the only Named Insured; and

 b. Separately to each insured against whom claim is made or "suit" is brought.

. . . .

SECTION V—DEFINITIONS

. . . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

When WWI refused to defend, Taft then asked Tri–S's worker's compensation and employer's liability insurer, Travelers, to defend him by a letter dated December 31, 1996. In a letter dated January 28, 1997, Travelers also refused, stating that it was not the liability carrier for either Tri–S or Taft. In relevant part, Tri–S's policy from Travelers provided as follows:

GENERAL SECTION

. . . .

B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. . . .

. . . .

PART TWO—EMPLOYERS LIABILITY INSURANCE

A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

. . . .

B. We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

 1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

. . . .

C. Exclusions

This insurance does not cover:

. . . .

 4. any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

 5. bodily injury intentionally caused or aggravated by you;

. . . .

D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. . . .

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

Tri–S was the named insured listed in the above-referenced Item 1, and no additional insureds were listed.

In response to the denials of defense and coverage, Tri–S and Taft filed a three-count complaint against WWI (but not Travelers) on July 17, 1997, seeking to establish that WWI owed Taft a duty to defend the suit. On August 6, 1997, WWI removed the case to federal court, after which the Rapoza Estate successfully moved to intervene. The case

was then remanded to state court on November 14, 1997.

On January 12, 1998, WWI filed a motion for summary judgment. On March 18, 1998, TSC–Taft filed their pretrial statement. Shortly thereafter, TSC–Taft filed their opposition to the motion for summary judgment (which doubled as a cross-motion for summary judgment), in which the Rapoza Estate joined. Apart from a copy of the CGL policy, WWI submitted no evidence in support of its motion. TSC–Taft, on the other hand, supplied, *inter alia*, an affidavit from Taft, which stated in relevant part:

4. I was the President, sole shareholder, and an employee of [Tri–S] at the time of the accident [in which Rapoza died].

5. At the time of the accident, I, as the chief executive officer and sole shareholder of [Tri–S], was the only person responsible for overseeing the work related duties of [Tri–S]. That in my capacity of president and general manager of [Tri–S], I was the individual at the company responsible for safety training of the company's employees, and for insuring that reasonable and prudent practices were carried out in connection with the company's drill rig operations in proximity to high voltage wires.

. . . .

8. I informed my workers, including [Rapoza], that safety rules prohibited them from operating the drill rigs within 10 feet of electrical lines. . . . Considering my warnings and instruction given to my workers . . . I did not expect that any of my workers would be injured or die as a result of electrocution. That on November 16, 1994, I was not at the work site . . . where Rapoza was electrocuted. . . . That at no time prior to November 16, 1994 did I intend or expect that Rapoza be or would be shocked because of his assisting in the drill rig operation at the [work site].

On May 12, 1998, the circuit court entered a written order granting summary judgment in favor of TSC–Taft and the Rapoza Estate

and against WWI. In relevant part, the order stated as follows:

[T]he Court makes the following findings of fact and conclusions of law:

1. Plaintiffs, Defendant [WWI] and Plaintiffs In Intervention have all moved for summary judgment on the issue of whether [WWI's] liability insurance policy issued to Tri–S . . . provides indemnity coverage to and obligates [WWI] to defend [Taft] in Plaintiffs In Intervention's action against him arising from the death of . . . Rapoza. . . .

2. All parties to this action agree that no material issues of fact are in dispute on either of the above issued [sic] raised by the parties' Motions for Summary Judgment [sic].

3. [WWI] argues that, as a matter of law, it has no duty to indemnify . . . Taft in the underlying action nor to defend him because, alternatively, (1) . . . Taft is not an insured under the policy, (2) exclusion e to the policy, which excludes from coverage claims for bodily injury brought by employees of the "insured" negates coverage to . . . Taft, and (3) the injury to Rapoza was not an "occurrence" within the meaning of the policy.

4. The policy expressly includes, as insureds, executive officers of corporate named insureds in their capacity as executive officers. (Sec. II 1.c of the policy). The evidence is undisputed that . . . Taft is an executive officer of the named insured on the policy, Tri–S. . . .

Paragraphs 38 and 40 of the Complaint in the underlying action . . . alleged that it was . . . Taft's duty and responsibility at Tri–S to implement safety standards and to ensure that necessary safety precautions were taken for the safety of Tri–S employees like Rapoza and that Taft failed to do so. Paragraph 5 of . . . Taft's Affidavit, which is undisputed, acknowledges this duty and responsibility, although he disputes that he failed to carry out his duty and responsibility. It is thus undisputed that, in the underly-

ing action, Mr. Taft was sued in his capacity as an executive officer of Tri–S. Mr. Taft is thus an insured within the meaing [sic] of the policy as to the underlying action.

5. Exclusion e to the policy excludes coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured (Coverage A, Section 2e(1.)). It is undisputed that Rapoza was an employee of Tri–S at the time of the accident.... The policy provides coverage separately to each insured against whom suit is brought (Section IV, Paragraph 7b.). In accordance with the majority rule in American jurisdictions, "the insured" in Exclusion e is ... Taft rather than Tri–S, and thus Exclusion e does not exclude coverage to ... Taft, who was not Rapoza's employer for purposes of the policy. *See, e.g., Zenti v. Home Ins[.] Co.,* 262 N.W.2d 588, 592 (Iowa 1978); *Pa. Nat. Mut. Cas. Ins. Co. v. Bierman,* 292 A.2d 674, 677 ( [Md.Ct.App.] 1972).

6. Coverage A of the policy applies to bodily injury only if caused by an "occurrence" (Section 1b(1)). "Occurrence" is defined in the policy as "... an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Section V 9.) Taft was sued in the underlying action for "wilful and wanton misconduct" under Section 386–8, HRS. "Wilful and wanton misconduct" includes reckless conduct that does not require a specific intent to cause injury. *Iddings v. Mee–Lee,* 82 Hawai'i 1, 919 P.2d 263 (1996). The undisputed Affidavit of Karl Taft indicates that he was not at the work site when Rapoza was electrocuted, was not aware that Rapoza was working in proximity to high voltage wires, and did not intend or expect that Rapoza would or could be shocked. Based thereon, it is clear that the shock to Rapoza was an accident within the meaning of the policy, which was neither intended nor ex-

pected from ... Taft's perspective. Accordingly, [WWI's] policy provides indemnity coverage to ... Taft for a judgment for special and general damages which may be entered against him in the underlying action, and a duty to defend him in that action.

7. Additionally, the Court has a duty to enforce the objectively reasonable expectations of the party claiming coverage, which are construed in accord with the reasonable expectations of a layperson. *Hawaiian Ins. & Guaranty Co. Ltd. v. Financial Security Ins. Co.,* 72 Haw. 80, 87–88[, 807 P.2d 1256, 1259–60] (1991).

8. "It is well settled that the duty to provide coverage and the duty to defend on the part of an insurer are separate and distinct." *Sentinel Ins. v. First Ins. of Hawaii,* 76 Hawai'i 277, 291[, 875 P.2d 894] (1994). "An insurer's duty to defend is independent of, and not limited by, its duty to pay." *Id.*

9. The Court concludes therefore that [Taft] had a reasonable expectation of insurance coverage under the policy issued by [WWI].

10. The Court further concludes that [WWI] had a duty to defend [Taft] in the personal injury suit filed and served on him when the suit was properly and timely tendered to it, and therefore, it breached its duty to defend.

11. If an insurer has breached its duty to defend its insured, then the insurer is obligated to reimburse the insured for the attorney's fees and costs incurred in defending the underlying suit and for the fees and costs incurred in prosecuting the declaratory relief action. *Sentinel* [, 76 Hawai'i at 297, 875 P.2d at 914]. *See also* HRS Section 431:10–242 (insurer obligated to pay attorney's fees and costs where it has contested its obligation to pay insurance benefits and is ordered to do so).

12. [WWI] is therefore obligated and ordered to reimburse [Taft] and/or [Tri–S] for the attorney's fees and costs incurred in defending [Taft] in the underlying action and for the attorney's fees and costs in prosecuting this declaratory relief action.

13. Where the insured seeks indemnification after the insurer has breached its duty to defend (1) coverage is rebuttably presumed, (2) the insurer bears the burden of proof to negate coverage, and (3) where relevant, the insurer carries its traditional burden of proof that an exclusionary clause applies. *Sentinel* [, 76 Hawai'i at 297, 875 P.2d at 914].

14. The Court concludes that [WWI] has not rebutted the presumption for indemnification, it has not satisfied its burden of proof to negate coverage, and it has not satisfied its traditional burden of proof that an exclusionary clause applies, and therefore, under the policy, [WWI] is obligated and is so ordered to indemnify [Taft] for special and general damages as an executive officer of [Tri–S] in the underlying action.

WWI moved for reconsideration of the May 12 order on the grounds that it was inconsistent with the circuit court's February 13, 1998 ruling in the underlying action that Taft was Rapoza's employer rather than co-employee. The February 13, 1998 order provided in relevant part:

6. All of the allegations made against [Taft], even if deemed to be true, are made against him with respect to his duties as the employer of [Rapoza]. The Court concludes that within the workers' compensation context, [Taft] is deemed the employer in this suit brought against him by the [Rapoza Estate] and is therefore immune from suit for [Rapoza's] work accident death.

WWI's motion for reconsideration was denied on July 13, 1998, on the grounds that it presented no new evidence that could not have been presented before.

On February 12, 1999, WWI filed for leave to file a third-party complaint against Travelers. The circuit court granted the motion on April 7, 1999, and WWI filed its third-party complaint on April 17, 1999, alleging that Travelers, not WWI, owed Taft a duty to defend and to indemnify. After some procedural jousting and discovery practice, TSC–Taft filed, and the Rapoza Estate and WWI joined, a motion on March 13, 2000(1) to extend the time to certify Doe Corporation, (2) for certification of third-party defendant Travelers as Doe Corporation No. 1, and (3) for leave to file a first amended complaint. Attached to the motion was a declaration from one of TSC–Taft's attorneys stating in relevant part:

7. Prior to [the filing of TSC–Taft's pre-trial statement on March 18, 1998] and for a substantial period afterwards, my analysis of the liability insurance policies held by Plaintiff Tri–S led me to conclude that ... [c]overage under Travelers' workers compensation insurance policy [was] uncertain. Accordingly, there was no reason to identify Travelers when Plaintiffs ultimately obtained their full remedy of defense and indemnity coverage pursuant to the Court's order of May 12, 1998.

It was only on April 7, 1999, that the Court allowed [WWI] to bring in Travelers as a third-party defendant. However pursuant to representations made by counsel for [WWI] that Travelers had reconsidered its position regarding no-coverage for Plaintiff Taft, I was given the impression that Travelers' inclusion in the case would result in a quick resolution between those two parties to satisfy the judgment that Plaintiffs already had against [WWI]. Obviously, it made no sense for Plaintiffs to bring in Travelers as a party defendant when such a move was un[n]ecessary and could have been unproductive to a resolution of the case at that time.

After several months of having Travelers in the case, it became evident that Travelers was not going to bring a resolution to the case.

. . . .

In short, the rather unusual factual circumstances of this case make[ ] it very clear that the earliest and most proper time for Plaintiffs to identify and bring in Travelers as a party defendant is right now. Due diligence and good faith in identifying Travelers could not have been made prior to this time as noted by the facts stated above.

Also on March 13, 2000, (1) TSC–Taft filed a motion for attorney's fees and costs, (2) Travelers filed a motion for summary judgment, and (3) TSC–Taft filed a cross-motion for summary judgment in which the Rapoza Estate and WWI joined.

On May 26, 2000, the circuit court entered a written order granting TSC–Taft's motion for certification of Travelers as a Doe Defendant and granting leave to file a first amended complaint. On June 1, 2000, TSC–Taft duly filed its amended complaint, keeping its three counts against WWI and adding three new counts against Travelers (which mirrored the claims against WWI). On June 26, 2000, WWI counterclaimed against TSC–Taft for declaratory relief that WWI's CGL policy did not provide coverage to Taft on the underlying claim and cross-claimed against Travelers for indemnification and contribution.

On June 28, 2000, the circuit court resumed the hearing on the motions for summary judgment and motion for fees and costs. After hearing argument from the parties regarding the distinction between Tri–S and Taft and the effect of that distinction, if any, on the issue of Travelers' duty to defend in the underlying suit, the circuit court observed:

Here Tri–S, who I believe I said on the record is in effect Karl Taft, purchased all this insurance to be sure that it had all this coverage. Whether he was sued personally or the company was sued. So he had the CGL policy through [WWI], he had the . . . worker's comp through Travelers. . . . And then you have the law and the Tri–S bylaws that say, listen, any officer is going to get covered by this policy. So in hindsight we can see all [these distinctions clearly]. But at the time when [TSC–

Taft's counsel] was trying to find out if there was any insurance company that would defend, he was really stuck. And the stuck part is—you put Tri–S in a position of having to say, do we hire one lawyer to take care of both of these entities, meaning Karl Taft and Tri–S, or—so that we can have a clear record four years down the road and the attorneys can say clearly this person represented this company and this person represented Mr. Taft? Do we hire two lawyers? In which case we'll be looking at double the attorney's fees and costs. It would not have been efficient. And it was a very difficult position to be in.

Now that takes us to the law, which is pretty clear that once the tender [of defense] is made—and [Travelers] might not consider it tender, but let's just for the sake of argument consider that a tender— that the insurance company has a duty to investigate, which makes sense. Had there been a proper investigation, then that clarity might be ours today.

Travelers nevertheless maintained that Tri–S had failed to tender to it the defense of a third-party indemnification claim by Taft, with the consequence that its duty to investigate was never triggered. After a lengthy back-and-forth debate as to whether Travelers had sufficient notice of a possible claim by Taft against Tri–S such as to trigger Travelers' duty to investigate, the circuit court found that Travelers did have sufficient notice based on the material facts not in dispute. Accordingly, the court granted summary judgment in favor of TSC–Taft and WWI and against Travelers. TSC–Taft's motion for fees and costs was also granted, with the amount to be fixed later, and a written order to that effect was entered on August 24, 2000.

On September 6, 2000, the circuit court entered a written order fixing the sum certain of $124,644.07 on TSC–Taft's motion for fees and costs. On October 6, 2000, the court entered a written order containing findings of fact and conclusions of law (1) denying WWI's motions for summary judgment on the counterclaim and for reconsideration of the May 12, 1998 order, and (2) granting

TSC–Taft's cross-motion for summary judgment on the counterclaim. In its order, the circuit court concluded that all of the claims made by WWI in its counterclaim had "already been decided against it by this [c]ourt in its Order of May 12, 1998."

On May 7, 2001, the circuit court entered a written order in furtherance of its June 28, 2000 oral grant of summary judgment in favor of Plaintiffs and WWI and against Travelers. In relevant part, the order stated as follows:

The facts are not disputed and all parties agree that there are no genuine issues of material fact. The Court therefore enters the following findings of fact:

1. The parties to this action are involved in two related cases, Civil No. 97–358 and Civil No. 98–597.

2. Both cases arise out of an industrial injury where a Tri–S Corporation employee sustained fatal injuries when equipment came in contact with or close proximity to a high voltage line.

3. Karl M. Taft is the president, stockholder and chief executive officer of Tri–S Corporation.

4. The employee's estate and survivors filed suit against various defendants, including Karl M. Taft.

5. Tri–S Corporation was insured by [Travelers] under a worker's compensation and employers liability insurance policy. Part Two, paragraph B.1. provides: . . . .

6. [HRS] § 415-5 provides for the indemnification of corporate officers, directors, employees and agents.

7. Article 19, Section 2, of the Tri–S By-Laws requires that the corporation indemnify directors and officers against all expenses and liability in connection with claims or lawsuits asserted against directors or officers.

8. Tri–S Corporation is the named insured under the [Travelers] insurance policy. Karl M. Taft is not a named insured.

The May 7, 2001 order also contained the following conclusions of law:

1. Tri–S Corporation is liable to Karl M. Taft for indemnification against all reasonable costs, expenses and liabilities (including counsel fees) actually and necessarily incurred by or imposed upon him in connection with or resulting from the claims asserted against him, involving the death of a Tri–S Corporation employee, which is the subject of this and other related actions.

2. The [Travelers] combination workers' compensation and employers liability policy provides coverage for its insured, Tri–S Corporation, for defense and indemnity, for its obligation to indemnify Karl M. Taft for expenses of defense and for damages claimed against Karl M. Taft as a result of injury to a Tri–S Corporation employee.

3. There is a reasonable expectation of coverage under the [Travelers] policy, for workers' compensation benefits under the workers' compensation part, and non-workers' compensation claims under the employers liability part, to provide comprehensive protection for all claims relating to employee injuries or death.

4. The construction of an insurance policy is a question of law for the Court, in the absence of any genuine issue of material fact.

5. There are no genuine issues of material fact.

. . . .

It is hereby ordered and decreed that [Travelers] is obligated to provide Tri–S Corporation coverage, for both defense and indemnity, for the liability of Tri–S Corporation to Karl M. Taft for indemnity relating to claims asserted against Karl M. Taft arising out of the death of a Tri–S Corporation employee.

On May 21, 2002, the circuit court entered an order containing: (1) a stipulation for dismissal without prejudice of (a) WWI's third-party complaint against Travelers, and (b) WWI's crossclaim against Travelers; and (2) a summary noting the disposition of claims including (a) summary judgment in favor of Plaintiffs against WWI on May 12, 1998, (b) summary judgment in favor of Plaintiffs and WWI against Travelers on May 7, 2001, (c) dismissal with prejudice of WWI's counterclaim on October 6, 2000, and

(d) award of fees and costs in favor of TSC–Taft on August 24, 2000.

On May 2, 2003, TSC–Taft filed a motion to set the form of the final judgment and to obtain prejudgment interest in order "to compensate them for the substantial delay that has occurred in setting the final judgment." The motion then came on for a hearing on July 16, 2003. After hearing argument, the circuit court ruled as follows:

You know, one of the things that I believe that the function of the statute was for was basically to be compensatory and not to be punitive.

And that is what I am seeking to do in—in looking at the situation, i.e., not to punish anyone for any ... dilatory tactics or for any ... conduct ... to which fault can be attached.

Basically with this attitude in mind, if I were to award interests ... I think that what I would be stuck with is basically the dates of May 12th, 1998, or September 6th, 2000.... But at that time thinking about it, it was not known to anyone what the attorney's fees were on May 12th, 1998. It was just an award of attorney's fees, but no one had determined what that was and it wasn't formally determined until September 6th, 2000.

Now, as of September 6, 2000, the defendants were made aware as to what the attorney's fees were. They had a definite figure.

And ... in terms of my assessment of what is fair and equitable considering the interest of the plaintiff and the interest of the insurance companies, I find that it would be fair and equitable to award interest as of September 6th, 2000.

Now, with respect to the reasons for the delay in reducing that particular award to a final judgment, it's not of concern to this Court.... And I think that [it] would be an inefficient use of the Court's time to base its decision upon whether or not fault should or should not be attributable to one party or the other.

I think this award of interests ... from September 6th, 2000 ... until it's paid ... will be sufficient incentive to all parties to work towards finalizing the issue and in arranging for payment as properly as possible.

A written order awarding prejudgment interest, accruing from September 6, 2000 at the statutory rate of 10% per annum until the judgment is satisfied, was entered on October 10, 2003.

Also on October 10, 2003, final judgment purporting to dispose of all claims and parties as stated above was entered in the circuit court. On October 31, 2003, WWI filed a timely notice of appeal in this court. On November 10, 2003, Travelers filed a timely notice of cross-appeal.

## II. STANDARDS OF REVIEW

A. *Motion for Summary Judgment in the Insurance Coverage Context*

We review the circuit court's grant or denial of summary judgment *de novo*. *Hawaiʻi [sic] Community Federal Credit Union v. Keka*, 94 Hawaiʻi 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

*Coon v. City and County of Honolulu*, 98 Hawaiʻi 233, 244–45, 47 P.3d 348, 359–60 (2002) (second alteration in original).

*Kau v. City and County of Honolulu*, 104 Hawaiʻi 468, 473–74, 92 P.3d 477, 482–83

(2004). This court has further explained the burdens of the moving and non-moving parties on summary judgment as follows:

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving part is entitled to summary judgment as a matter of law.

*French v. Hawaii Pizza Hut, Inc.*, 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004) (quoting *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App. 1995)) (emphasis deleted). In the insurance context, with specific regard to the insurer's duties to defend and indemnify under the policy, this court has distilled the summary judgment standard still further:

It is well settled that the duty to provide coverage [*i.e.*, the duty to indemnify,] and the duty to defend on the part of an insurer are separate and distinct. Moreover, the parties' respective burdens of proof with respect to the duties to indemnify and to defend are also distinct.

With respect to [an insurer's] prayer for a declaration that it has no duty to *defend* ... pursuant to the polic[y, its] already

heavy burden of proof as a movant for summary judgment [i]s significantly augmented. The obligation to defend is broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage. In other words, the duty to defend rests primarily on the *possibility* that coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

Accordingly, in connection with the issue of its duty to defend, [the insurer bears] the burden of proving that there [i]s no genuine issue of material fact with respect to whether a *possibility* exist[s] that [the insured] would incur liability for a claim covered by the polic[y]. In other words, [the insurer is] required to prove that it would be *impossible* for the [claimant] to prevail against [the insured] in the underlying lawsuit[ ] on a claim covered by the policies. Conversely, [the insured's] burden with respect to its motion for summary judgment [i]s comparatively light, because it ha[s] merely to prove that a *possibility* of coverage exist[s].

With respect to [an insurer's] prayer for a declaration that it ha[s] no duty to *indemnify* [the insured] pursuant to the polic[y, it is] *not* required to disprove any *possibility* that its insured might be liable for a claim asserted in the underlying lawsuits. Rather, without reference to what the eventual outcome of the underlying lawsuits might actually be, [the insurer is] required only to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance polic[y] and the consequent entitlement to the entry of judgment as a matter of law.

*Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 412–13, 992 P.2d 93, 107–08 (2000) (internal citations, quotation signals, and footnote omitted; some brackets and ellipses deleted and some brackets and ellipses added; emphases in original).

B. *Conclusions of Law and Rules for Construction of Insurance Policies*

 "A trial court's conclusions of law are reviewed de novo, under the right/wrong standard of review." *Child Support Enforcement Agency v. Roe*, 96 Hawai'i 1, 11, 25 P.3d 60, 70 (2001) (quoting *State v. Ah Loo*, 94 Hawai'i 207, 209, 10 P.3d 728, 730 (2000)) (internal brackets and quotation marks omitted). The construction of a contract is a question of law subject to this *de novo* standard of review. *Hanagami v. China Airlines, Ltd.*, 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984). Moreover, because an insurance policy is a contract,

> insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended. Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.
>
> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Dairy Rd. Partners*, 92 Hawai'i at 411–12, 992 P.2d at 106–07 (internal citations, quotation marks, brackets, and ellipses omitted).

C. *Award of Prejudgment Interest*

 An award of prejudgment interest is reviewed for abuse of discretion. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 137, 839 P.2d 10, 36 (1992). "Generally, to constitute an abuse [of discretion,] it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Sacoco*, 45 Haw. 288, 292, 367 P.2d 11, 13 (1961).

D. *Motion for Reconsideration*

 This court also employs the abuse of discretion standard in reviewing a circuit court's denial of a motion for reconsideration. *Sentinel*, 76 Hawai'i at 290, 875 P.2d at 907. A circuit court does not abuse its discretion when no new argument is presented on reconsideration. *Id.*

E. *Motion for Extension of Time to Certify Doe Defendants and Motion for Certification of Doe Defendants*

 Hawai'i Rules of Civil Procedure (HRCP) Rule 17(d)(3) (2000) provides in relevant part:

> When the naming or identification [of an unknown defendant] is made by a plaintiff, it shall be made prior to the filing of the pretrial statement by that plaintiff, or within such additional time as the court *may* allow. The court *shall freely grant reasonable extensions* of the time in which to name or identify the party defendant to any party exercising due diligence in attempting to ascertain the party defendant's name or identity.

(Emphases added.) As the use of the word "may" implies, the circuit court has discretion to grant extensions of time, and thus we review its orders in this regard for abuse of that discretion. *See State v. Kahawai*, 103 Hawai'i 462, 465, 83 P.3d 725, 728 (2004) ("The term 'may' [used] in describing the court's power ... denotes discretion."). *See also Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.*, 65 Haw. 592, 597, 656 P.2d 84, 88 (1982) (holding that "the matter of extensions is addressed to the sound judgment of the trial court").

 As for the motion to certify itself, HRCP Rule 17(d)(4) states:

> When a party defendant has been named or identified in accordance with this rule, the court *shall* so certify and may make any order that justice requires to protect any party from undue burden and expense

in any further proceedings involving the party defendant.

(Emphasis added.) The use of the word "shall" indicates that the grant or denial of certification is mandatory. *See Taomae v. Lingle,* 108 Hawai'i 245, 251, 118 P.3d 1188, 1194 (2005) ("The term 'shall' is ordinarily used in a mandatory sense." (Citation omitted.)). Therefore, the grant or denial of a motion for certification is a question of law reviewed *de novo.*

### F. *Motion for Leave to File an Amended Complaint*

HRCP Rule 15(a) (2000) provides that "leave [to amend a complaint] shall be freely given when justice so requires." This court has interpreted the rule as meaning that "the grant or denial of leave to amend under Rule 15(a) is within the discretion of the trial court." *Associated Enq'rs & Contractors v. State,* 58 Haw. 187, 218, 567 P.2d 397, 417 (1977) (citing *Bishop Trust Co., Ltd. v. Kamokila Dev. Corp.,* 57 Haw. 330, 555 P.2d 1193 (1976)).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Associated Enq'rs & Contractors,* 58 Haw. at 218–19, 567 P.2d at 417 (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

### III. *DISCUSSION*

### A. *WWI's Appeal*

With respect to the litany of errors assigned by WWI, there are essentially three groups: (1) questions relating to the interpretation of WWI's CGL policy; (2) questions relating to the propriety of summary judgment; and (3) post-summary judgment questions. For the reasons set forth below, we hold that: (1) Taft was covered under the CGL policy such that WWI had a duty to defend and indemnify; (2) the circuit court did not err in granting summary judgment in favor of TSC–Taft [7] and the Rapoza Estate; and (3) the post-summary judgment questions were properly decided by the circuit court. For purposes of analytical clarity, we first address the purely legal questions relating to interpretation of the policy, the resolution of which is necessary to dispose of the second, and, in turn, third group of questions.

### 1. Interpretation of the CGL Policy.

WWI argues that, as a matter of law, it was not obligated to defend or indemnify Taft with respect to the underlying wrongful death suit based on the language of the CGL policy. WWI's arguments regarding the interpretation of the policy are divisible into two types: first, that Taft was not an "insured" under the terms of the policy for purposes of the underlying claim; and second, that even if Taft was an "insured," he was nevertheless not covered in the instant case due to an applicable policy exclusion. For the reasons set forth below, neither group of arguments has merit.

### a. *Taft falls within the CGL policy's definition of "insured."*

WWI contends, correctly, that "[i]n order for [WWI] to have a duty to defend or to indemnify Mr. Taft in the underlying case, he

---

7. As a preliminary matter, WWI challenges the grouping of Tri–S and Taft, arguing that Tri–S lacks standing to bring the instant action because it is not a defendant in the underlying action. However, we hold that Tri–S has adequately demonstrated its standing. It is well settled that to establish standing, a party must show: (1) actual or threatened injury resulting from the defendant's conduct; (2) that is fairly traceable to the defendant's actions; and (3) relief will likely be provided for the party as the result of a favorable decision. *Bush v. Watson,* 81 Hawai'i 474, 479, 918 P.2d 1130, 1135 (1996). Here, Tri–S has showed that it suffered financial injury (*i.e.,* the payment of Taft's attorney's fees) that is fairly traceable to WWI's failure to defend Taft in the underlying action (*i.e.,* but for WWI's failure to pay for Taft's defense, Tri–S would not have had to pay Taft's fees), and a favorable decision in the instant case will likely result in relief for Tri–S (*i.e.,* WWI would be forced to reimburse Taft, who in turn would reimburse Tri–S). Accordingly, Tri–S has a stake in the outcome of this case such as to give it standing.

must first be an insured with respect to the claim made against him." TSC–Taft responds that Taft was an insured by virtue of his status as an executive officer of Tri–S. The circuit court concluded that "Taft was sued in his capacity as an executive officer of Tri–S. Taft is thus an insured within the mea[n]ing of the policy as to the underlying action." For the reasons set forth below, we hold that the circuit court's conclusion was correct.

As noted above, Section II.1.c of the CGL policy provides that the executive officers of Tri–S "are insureds, *but only with respect to their duties as [Tri–S's] officers.*" (Emphasis added.) It is undisputed that Taft was an executive officer of Tri–S. Section II.2.a adds that Tri–S employees, *"other than [Tri–S] executive officers,* [are also insureds,] but only for acts within the scope of their employment by [Tri–S].... However, *no 'employee'* is an insured for ... 'Bodily injury' ... to a co-'employee'[.]" (Emphases added.) It is also undisputed that Rapoza, an employee of Tri–S, suffered a bodily injury, that Taft was an employee of Tri–S and thus a co-employee of Rapoza, and that both were acting within the scope of their employment at the relevant times. Accordingly, Taft is an insured for purposes of the underlying suit if: (1) he was sued with respect to performance of his duties as a Tri–S officer, and (2) the bodily injury exception does not apply to executive officers. The first question is dealt with below in Section III.A.2, while the second is addressed herein.

WWI argues that the phrase "no employee" means that no employee—whether executive officer or otherwise—is insured with respect to the bodily injury of a co-employee. TSC–Taft replies that while the phrase "no employee," when taken alone, might suggest that the bodily injury exception applies to all co-employees, it must be read in context with the previous sentence carving out executive officers from other employees generally. Although WWI is able to cite a favorable case directly on point, we nevertheless conclude that TSC–Taft has the more persuasive argument.

WWI refers us to *Zaiontz v. Trinity Universal Ins. Co.,* 87 S.W.3d 565 (Tex.App.

2002). There, the court considered policy language identical to that in the Tri–S CGL policy and held that "the phrase 'no employee' must be interpreted to mean 'no employee'—whether or not the employee is an executive officer." *Id.* at 570 (citation omitted). The *Zaiontz* court reasoned that executive officers are also employees and that "if the second sentence in section II.2.a.(1) had been intended to deny insured status only to employees who were not executive officers, it would have used the phrase 'these employees,' not 'no employee.'" *Id.* (citation omitted).

While the reading adopted by the court in *Zaiontz* is persuasive when the sentence is examined in isolation, this court is bound to interpret an insurance contract in its entirety. *Dairy Rd. Partners,* 92 Hawai'i at 411–12, 992 P.2d at 106–07. As such, the second sentence must be considered in connection with the first, as well as in the context of the separation of executive officers (insured under Section II.1) from other employees (insured under Section II.2) in the policy. When read in this way, the definition of employee for purposes of the phrase "no employee" does not include executive officers. This interpretation, as TSC–Taft notes, is supported by the placement of the clauses—Taft claims insured status under Section II.1.c, which governs insured status for officers and directors, while the bodily injury exception is located in Section II.2.a, a completely different subsection pertaining to non-executive corporate employees. That the insured status of executive employees with respect to their executive duties was intended to be governed only by subsection 1 is indicated by the carve-out of executive officers in the first sentence of Section II.2.a. Accordingly, the bodily injury exception to insured status does not apply to Taft as an executive officer.

 b. *No exclusions are applicable due to the operation of the policy's severability of interests clause.*

 WWI next contends that, even if Taft was an insured under the policy, he was nevertheless not covered by virtue of various exclusions. First, WWI argues that Taft was

not covered due to Section I.2.d, the worker's compensation exclusion. As set forth above, that exclusion provides that coverage does not exist for "[a]ny obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law." Second, WWI argues that Section I.2.e, the bodily injury exclusion, which excludes coverage for bodily injury to an "employee of the insured arising out of and in the course of . . . [e]mployment by the insured," applies. TSC–Taft counters that Tri–S, not Taft, was the employer of Rapoza, and thus neither exclusion applies to Taft. TSC–Taft's position has merit.

The interpretation of Sections I.2.d and e turns on the meaning of the phrase "the insured." Section IV.7 of the policy states that the policy applies "[s]eparately to each insured against whom claim is made or 'suit' is brought." This is a standard insurance contract provision known as a severability-of-interests clause, the import of which has been extensively discussed in the literature and case law outside of Hawai'i, *see generally Barnette v. Hartford Ins. Grp.*, 653 P.2d 1375, 1376–83 (Wyo.1982), although it presents an issue of first impression here. The majority view is that, by operation of the severability clause, "the insured" must be read to mean the party seeking coverage rather than the named insured (*i.e.*, corporation-employer) or "any insured" in analyzing whether the bodily injury and worker's compensation exclusions apply. *See, e.g., Barnette*, 653 P.2d at 1379–80 (collecting cases and holding that an executive officer is not the employer for purposes of determining coverage but rather an additional insured to whom the employee exclusion does not apply); *Zenti v. The Home Ins. Co.*, 262 N.W.2d 588, 592 (Iowa 1978) (collecting cases and holding that "the severability-of-interests clause was inserted into insurance contracts to make clear that the employee exclusion is applicable only when the person claiming coverage as insured is the employer").

The rationale for this interpretation of the severability-of-interests clause was first expressed nearly fifty years ago as follows:

> The logical theory for the employee exclusion is to prevent [an] employee[ ] of the tort feasor [sic] from suing his employer for injuries received thru [sic] his employer's negligence. A reason for this is that employees are usually covered by workmen's compensation and can recover from the employer, with or without negligence. When negligence is committed by other than his employer, the logic for the exclusion disappears. If the insurer wishes to further exclude its liability, it could clearly so state in its contract and its failure to do so should be strictly construed. *Especially is this true when the policy contains a severability clause, for there it can be implied that the insurer is actually recognizing a separate obligation to others, distinct and apart from the obligation it owes to the named insured.*

*Gen'l Aviation Sup. Co. v. Ins. Co. of N. Am.*, 181 F.Supp. 380, 384 (E.D.Mo.1960), *aff'd* 283 F.2d 590 (8th Cir.1960), *quoted in Barnette*, 653 P.2d at 1380 (emphasis and bracketed material added). The *Zenti* court emphasized this last point regarding separate obligations to each insured, noting:

> Indeed, as we have pointed out, most courts now interpret "Severability of Interests" clauses as expressing an acknowledgment on the part of insurance companies that the term "insured" does not always mean *any* insured who could claim coverage under the policy but *only the insured claiming coverage.*

*Zenti*, 262 N.W.2d at 590–91 (citations omitted; first emphasis in original, second emphasis added).

Based on the foregoing, we adopt the majority rule and hold that where an insurance policy contains a severability-of-interests clause, the phrase "the insured" in a policy exclusion must be read to refer to the insured seeking coverage as opposed to the "named insured" or "any insured." Here, the insured claiming coverage is Taft; thus the phrase "employee of the insured" under Section I.2.e.1 must be read "employee of Taft." However, Rapoza was not an employee of Taft, but of Tri–S, so the exclusion does not apply. Similarly, the phrase in Section I.2.d, "obligation of the insured," under worker's compensation law, must be read "obligation of Taft." Again, however, Taft

had no obligations to Rapoza under Hawai'i worker's compensation law because he was not Rapoza's employer; instead it was Tri–S which shouldered those burdens. Accordingly, neither exclusion applies and the circuit court did not err in concluding that Taft was covered under the WWI policy.

## 2. The Circuit Court Did Not Err in Granting Summary Judgment in Favor of Plaintiffs as to WWI's Duty to Defend and Indemnify Taft in the Underlying Lawsuit.

In addition to its arguments regarding the interpretation of the CGL policy, WWI also argues that there were genuine issues of material fact that should have prevented the circuit court from granting summary judgment in TSC–Taft's favor. WWI essentially contends that there were genuine issues of material fact whether (1) the conduct alleged in the underlying suit constituted an "occurrence" within the meaning of the policy, and (2) Taft was sued in his capacity as an executive officer. Based on our holding in *Dairy Road Partners,* however, we conclude that the circuit court did not err in granting summary judgment because TSC–Taft carried its light burden of establishing the *possibility* that coverage existed.

### a. *TSC–Taft established the possibility that the underlying suit involved a covered claim because "occurrence" as defined in the policy does not exclude wilful and wanton misconduct.*

 WWI contends that the claim in the underlying suit does not constitute an "occurrence" within the meaning of the CGL policy because the complaint alleges intentional misconduct, which is excluded from coverage. As set forth above, Section I.1.b of the CGL policy provides that only bodily injuries sustained in "occurrences" (*i.e.,* accidents) are included in coverage, while Section I.2.a provides that bodily injuries "expected or intended" from the standpoint of the insured are excluded from coverage. TSC–Taft counters that the undisputed facts set forth in Taft's affidavit in support of TSC–Taft's cross-motion for summary judgment make it clear that Rapoza's death was not expected

or intended from Taft's standpoint. As set forth below, we hold that summary judgment was properly granted in TSC–Taft's favor on this issue because, as the circuit court found, TSC–Taft carried its burden of establishing the possibility that the underlying claim involved an "occurrence" and was thus covered under the policy.

For its part, WWI relies upon allegations in the underlying complaint that "Taft knew that serious bodily injury or death to [Rapoza] was the highly probable result" of contact with high voltage power lines but nevertheless "consciously and wilfully failed" to implement proper safety standards despite this knowledge. Specifically, WWI argues, "These are all words of expectation. We expect that highly probable events will happen." TSC–Taft, on the other hand, relies on the complaint's allegations of "wilful and wanton" misconduct and negligence, as well as Taft's undisputed statements in his affidavit that, *inter alia:* (1) Taft was not present at Rapoza's worksite the day he was electrocuted; (2) he did not know that Rapoza was drilling in proximity to high voltage wires; and (3) he did not intend or expect that Rapoza would be injured.

WWI's reading of the complaint is not unreasonable (*i.e.,* the complaint does encompass allegations of intentional misconduct), but it is nevertheless incomplete. That is, WWI fails to recognize the assertion of *nonintentional* misconduct also included in the complaint's allegations of "wilful and wanton misconduct" and negligence. As this court made clear in *Iddings,* wilful and wanton misconduct "does not require proof that the injuring co-employee possessed a specific intent to cause injury[.]" *Iddings,* 82 Hawai'i at 6, 919 P.2d at 268. Instead, "wanton" also includes recklessness. *Id.* at 7, 919 P.2d at 269. *See also Ellis v. Mut. Tel. Co.,* 29 Haw. 604, 617 (1927) (holding that allegations of "wanton" misconduct may also encompass simple negligence).

 In view of the fact that the underlying complaint alleges a claim for relief against Taft that may be supported by evidence of either intentional or non-intentional misconduct, it bears repeating that

the duty to defend rests primarily on the *possibility* that coverage exists. This possibility may be remote but if it exists, the insurer owes the insured a defense. All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

Accordingly, in connection with the issue of its duty to defend, [the insurer bears] the burden of proving that there [i]s no genuine issue of material fact with respect to whether a *possibility* exist[s] that [the insured] would incur liability for a claim covered by the polic[y]. In other words, [the insurer is] required to prove that it would be *impossible* for the [claimant] to prevail against [the insured] in the underlying lawsuit[ ] on a claim covered by the polic[y]. Conversely, [the insured's] burden with respect to its motion for summary judgment [i]s comparatively light, because it ha[s] merely to prove that a *possibility* of coverage exist[s].

*Dairy Rd. Partners*, 92 Hawai'i at 412–13, 992 P.2d at 107–08. It goes without saying that, in light of *Iddings* and the undisputed evidence in Taft's affidavit, WWI cannot prove that it would be impossible for the Rapoza Estate to prevail against Taft on a "wilful and wanton" misconduct claim based upon evidence only of non-intentional misconduct because the possibility exists that Taft could be found liable for recklessness, which does not involve intent or expectation of injury and is thus a covered occurrence under the policy.[8] Consequently, the circuit court did not err in concluding that the conduct alleged in the complaint constituted an occurrence for purposes of WWI's duty to defend.[9]

8. In holding that recklessly caused injuries are not excluded under the "expected or intended" injury exclusion found in Section I.2.a of the policy, we adopt the interpretation of that exclusion followed in *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705 (Ind.Ct.App.2004). There, the court reasoned and held as follows:

> [O]ur court [has] made the following observations with regard to the "standard 'intended or expected' exclusionary clauses:"
>
> The intent aspect ... contemplate[s] the 'volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs.' It is met either by showing an actual intent to injure, or by showing the nature and character of the act to be such that an intent to cause harm to the other party must be inferred as a matter of law.
>
> 'Expected' injury means injury that occurred when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions. *However, the definition of 'expected' does not exclude harm that the insured 'should have anticipated[.]'* Consciousness of the likelihood of certain results occurring is determined by examination of the subjective mental state of the insured.
>
> *Sans v. Monticello Ins. Co.*, 676 N.E.2d 1099, 1102 (Ind.Ct.App.1997), *trans. denied* (quoting *Stevenson v. Hamilton Mut. Ins. Co.*, 672 N.E.2d 467, 470–72 (Ind.Ct.App.1996), *trans. denied*). Our court has also concluded that negligent and reckless conduct "is not enough to meet the 'practically certain' standard required for an insurance policy to exclude expected injuries." *Coy v. Nat'l Ins. Ass'n*, 713 N.E.2d 355, 360 (Ind.Ct.App.1999) (citing *Bolin v. State Farm Fire & Cas. Co.*, 557 N.E.2d 1084, 1088 (Ind.Ct.App.1990), *trans. denied*).

> Therefore, even if the evidence demonstrates a disregard for safety, such evidence "is not enough to warrant exclusion under either the lesser 'expected injuries' standard or the greater 'intended injuries' standard." *Id.*

*Id.* at 728 (emphasis added). *Accord Ohio Cas. Ins. Co. v. Henderson*, [189 Ariz. 184,] 939 P.2d 1337, 1343 (1997) (holding that the "expected or intended" injury exclusion excludes injuries that were intended or "substantially certain" to occur from the standpoint of the insured); *Cont'l W. Ins. Co. v. Toal*, [309 Minn. 169], 244 N.W.2d 121, 125 n. 3 (1976) (observing that "expected" requires a "high degree of certainty"); *State Farm Fire & Cas. Co. v. Muth*, [190 Neb. 248], 207 N.W.2d 364, 366 (1973) ("The term 'expected' when used in association with 'intended' carries the connotation of a high degree of certainty or probability and seems to be used to practically equate with 'intended,' because one expects the consequences of what one intends." (Citation omitted.)); *United Services Auto. Ass'n v. Elitzky*, [358 Pa.Super. 362], 517 A.2d 982, 989 (1986) (holding that the "expected or intended" injury exclusion excludes injuries that were designed or planned, as well as those that were "substantially certain" to occur from the standpoint of the insured). Here, because the underlying complaint contains allegations that Rapoza's death was "highly probable," rather than "practically certain," to occur from Taft's standpoint, the alleged conduct does not fall under the policy's "expected or intended" bodily injury exclusion.

9. It should also be noted that, to the extent that WWI relies on the underlying complaint in its opposition to summary judgment *as evidence* (rather than as a pleading that may or may not have triggered its duty to defend), arguing that the complaint's allegations are evidence of a material fact to dispute the facts alleged in Taft's

b. *TSC–Taft established the possibility that Taft was sued in his capacity as an executive officer of Tri–S.*

■ WWI also argues that it is clear from the allegations in the wrongful death complaint that Taft was being sued for breach of his duty as a co-employee (or in the alternative that there was a genuine issue of material fact precluding resolution by summary judgment), not for breach of his duty as an executive officer, because the Rapoza Estate may recover against Taft only as a co-employee. TSC–Taft counters that the Rapoza Estate's chances of success in the underlying suit are not relevant to whether WWI had a duty to defend under the policy. TSC–Taft adds that it met its burden of production with respect to summary judgment by offering Taft's undisputed affidavit, which stated that, as chief executive officer, he was the only person responsible for safety training and supervision of construction practices at Tri–S. TSC–Taft continues that because WWI failed to dispute this fact, it thus failed to meet its burden of production in opposing TSC–Taft's motion. As set forth above, the circuit court held, based on Taft's affidavit and the allegations in the complaint, that "[i]t is ... undisputed that, in the underlying action, ... Taft was sued in his capacity as an executive officer of Tri–S." For the reasons set forth below, we hold that this conclusion was correct with respect to whether summary judgment was proper as to WWI's duty to defend.

Although we agree with WWI that "[i]t is clear from the record that the parties were arguing over whether or not Taft was [sued as] a co-employee," it is equally clear that the material facts (*e.g.*, who was responsible for safety practices at Tri–S, who was present at Rapoza's worksite on the day of his death, Taft's positions at Tri–S, etc.) are themselves not in dispute. What is actually in dispute is the legal significance of those facts—Taft, as the proprietor of a small business, wore multiple, non-mutually exclusive hats at Tri–S, including those of owner, executive officer, manager, and employee; thus, the question is, which hat was Taft wearing in connection with the alleged breach of duty that resulted in Rapoza's death? As a conclusion of law dependent on findings of fact, this likely presents a mixed question of law and fact.[10] *Booth v. Booth*, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999).

However, under *Dairy Road Partners*, which demands only that the possibility of coverage be established for an insured to prevail on a motion for summary judgment as to the insurer's duty to defend, the legal question at issue can be distilled still further to, "Was it *possible* that Taft's alleged breach of duty occurred in his capacity as an executive officer?" The allegations in the complaint, naming Taft as both president and manager of Tri–S, raise the possibility that Taft could have been found liable in his capacity as president. Moreover, Taft's affidavit stating that, as an executive officer, he was responsible for Tri–S policies and practices regarding drilling and safety also raises the possibility that Rapoza's death could be characterized as the result of a breach of Taft's duty, in his capacity as executive officer, to design and execute corporate policy, rather than a breach of his duty, as a super-

affidavit, such reliance is misplaced. A party may not rely on an unverified complaint to support or oppose a motion for summary judgment because such pleadings are not evidence within the scope of the summary judgment rule. *See, e.g., Kelly v. United States*, 924 F.2d 355, 357 (1st Cir.1991) ("[T]he non-movant may not rest upon mere allegations in, say, an unverified Complaint or lawyer's brief, but must produce evidence which would be admissible at trial to make out the requisite issue of material fact." (Citation omitted.)).

10. But note that where the facts are undisputed, the question may become one of law. *See Stewart v. Spalding*, 23 Haw. 502, 517 (1916) (holding that "where the facts are undisputed and are susceptible of but one reasonable inference [a mixed question of law and fact] becomes one of law for the court") (citations omitted). This court need not further analyze either the nature of the question or the ultimate answer, however, because the summary judgment standard in the context of an insurer's duty to defend requires only the possibility that the answer be favorable to the insured. *See Sentinel*, 76 Hawai'i at 290, 875 P.2d at 907 (holding that determining breach of duty to defend does not require resolution of open questions in the underlying case because the fact that, based on the allegations in the complaint, the questions are open in itself demonstrates the possibility that the insured will be entitled to coverage).

visory co-employee, to carry out corporate policy.

On the other hand, it is possible, if not likely, that a court or jury would conclude that Taft breached his duties as a manager (*i.e.,* supervisory co-employee) rather than as an executive officer, as WWI notes, just as it is possible, if not likely, that a court might rule that the duty to provide a safe work place is a non-delegable duty owed by the employer rather than the co-employee, and thus Taft could not be liable to Rapoza. *See Michel v. Valdastri, Ltd.,* 59 Haw. 53, 56, 575 P.2d 1299, 1301 (1978) (observing, albeit in a different context, that "[it] has long been the established *duty of the employer* to provide his employees a reasonably safe place to work") (citation omitted; emphasis added). It is also possible that a jury would conclude that Taft was at most negligent rather than reckless, and thus not liable to the Rapoza Estate under *Iddings.*[11] However, neither the allegations in the complaint nor any evidence adduced by WWI foreclose the possibility that Taft could be found liable for a covered claim (*i.e.,* non-intentional misconduct in his capacity as an executive officer). As such, WWI had a duty to defend Taft despite any unlikelihood, as contended by WWI, that Taft would be found liable in the underlying suit on a covered claim. *See Commerce & Indus. Ins. Co. v. Bank of Hawaii,* 73 Haw. 322, 327, 832 P.2d 733, 736 (1992) ("An insurer has a duty to proceed in defense of a suit, at least to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy, and not merely that it might not be." (Quoting 7C J. Appleman, Insurance Law

and Practice § 4683.01 at 69 (Berdal ed.1979).)) (Footnote omitted.). Because WWI submitted no evidence to rebut Taft's affidavit and prove that it would be *impossible* for the Rapoza Estate to prevail in the underlying suit on the basis that Taft breached his duty as an executive officer, the circuit court did not err in granting summary judgment in favor of TSC–Taft as to WWI's duty to defend.[12]

### 3. The Circuit Court Did Not Err Either in Denying WWI's Motion for Reconsideration or in Awarding Prejudgment Interest in Favor of TSC–Taft.

WWI also assigns error with respect to the rulings of the circuit court subsequent to the May 1998 grant of summary judgment in TSC–Taft's favor. First, WWI argues that the circuit court erred in denying its May 21, 1998 motion for reconsideration of the summary judgment order. Second, WWI argues that the circuit court's October 10, 2003 award of prejudgment interest in favor of TSC–Taft was both unreasonable and incorrectly calculated. For the reasons set forth below, we hold that the circuit court did not abuse its discretion in denying the motion for reconsideration, and even assuming the circuit court abused its discretion, the issue is moot. Moreover, we conclude that the award of prejudgment interest was not an abuse of discretion because no showing of fault on the part of WWI was required, and the start date of September 6, 2000 was not clearly unreasonable.

---

**11.** In this connection, we note that nothing in the instant opinion should be taken to expand, diminish, or in any way disturb our holding in *Iddings* regarding the scope of the "wilful and wanton misconduct" exception to workers compensation exclusivity found in HRS § 386–8.

**12.** With respect to WWI's duty to indemnify, WWI assigns as separate error the circuit court's conclusion that WWI is also obligated to indemnify Taft, because, having breached its duty to defend, WWI failed to rebut the presumption of coverage and carry its burden of proof to negate coverage. However, WWI makes no argument in support of this point of error—the only point argued is that WWI had no duty to indemnify

because it had no duty to defend—and thus the argument that WWI had no duty to indemnify even if it had a duty to defend is deemed waived. *See* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived."). To be clear, we note that our finding that WWI waived the argument that it does not owe Taft a duty of indemnification (or that such a determination is premature) should *not* be taken either as a comment on the merits of the circuit court's application of our decision in *Sentinel* to the instant case or as precedent for the general proposition that the duty to indemnify may be irrebuttably presumed from the duty to defend.

a. *The circuit court did not abuse its discretion in denying WWI's motion for reconsideration.*

 WWI contends that the circuit court abused its discretion in denying its motion for reconsideration because the new evidence [13] it presented—specifically, the finding in the underlying action that Taft was deemed the employer of Rapoza in the worker's compensation context and thus immune from the Rapoza Estate's suit—gave rise to inconsistent findings (*i.e.*, that Taft was found to be the employer in the underlying action when Tri–S was found to be the employer in the instant action). TSC–Taft raises three counterarguments: (1) the findings are not necessarily inconsistent because Taft was found to be the employer for purposes of Hawai'i worker's compensation law only; (2) the point is now moot because this court reversed the circuit court's summary judgment order on the basis that Taft was not Rapoza's employer; and (3) the finding in the underlying suit is in any event irrelevant because the duty to defend is determined at the time defense is refused, which was at least seven months prior to the December 1997 issuance of the finding in the underlying suit. Assuming without deciding that the findings are in fact directly contradictory, TSC–Taft's second and third counterarguments nevertheless have merit.

First, the point is moot. This court vacated the summary judgment order in favor of Taft in the underlying suit, ruling that "Tri–S and not Taft was the employer of Rapoza." *Willocks*, 2004 WL 27460, at *5 (Acoba, J., announcing the judgment of the court). The vacated order below is thus a nullity, and any error contained therein is now without effect. *See, e.g.*, *7–Eleven, Inc. v. Dar*, 363 Ill.App.3d 41, 299 Ill.Dec. 521, 842 N.E.2d 260, 264 (2005) ("The effect of a vacated order is that of a void order." (Citation omitted.)).

Second, the summary judgment order in the underlying suit was irrelevant to a determination of whether WWI had a duty to defend. This court has held that "whether an insurer's refusal to defend was justified must be answered in light of the information available to the insurer *at the time it made the refusal.*" *Sentinel*, 76 Hawai'i at 288, 875 P.2d at 905 (citation omitted; emphasis added). Here, WWI refused coverage to Taft in December 1996 and affirmed the coverage denial in May 1997, while the summary judgment order in the underlying suit was not entered until February 1998. Therefore, the circuit court did not abuse its discretion in denying WWI's motion for reconsideration where that motion was based on an order entered subsequent to its refusal to defend.

b. *The circuit court did not abuse its discretion in awarding prejudgment interest to TSC–Taft.*

 WWI's final argument is that the circuit court abused its discretion in awarding prejudgment interest to TSC–Taft, commencing from September 6, 2000, pursuant to its October 10, 2003 order. Specifically, WWI argues that "[p]re-judgment interest is not typically awarded unless there is a finding of undue delay by a defendant." TSC–Taft counters that no finding of fault on the part of a defendant is required. For the reasons set forth below, we hold that the circuit court did not abuse its discretion in awarding prejudgment interest to TSC–Taft.

An award of prejudgment interest is authorized under HRS § 636–16 (1993):

> **Awarding interest.** In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising ... by breach of contract, it may be the date when the breach first occurred.

In interpreting the statute, this court has held that an award of prejudgment interest is reviewed for abuse of discretion. *Amfac*, 74 Haw. at 136–37, 839 P.2d at 36. In *Amfac*, this court held that a denial of prejudgment

---

**13.** The Rapoza Estate notes that, in fact, the evidence adduced by WWI was not "new," but was instead known to WWI at least five days before it signed its reply memorandum on the motion for summary judgment and twelve days before the April 8, 1998 hearing on the motion. Although the Rapoza Estate's argument appears to have merit, we assume without deciding that WWI's argument was nevertheless "new" enough to be considered on the merits.

interest was not an abuse of discretion where there was "no evidence in the record that any of [the opposing party's] conduct unduly delayed proceedings[.]" *Id.* at 137, 839 P.2d at 36. Although this language standing alone would appear to support WWI's contention that this court wished to limit awards of prejudgment interest to situations where litigation delays were connected to the fault of the party opposing the award, the *Amfac* court also cited cases supporting the contrary proposition that fault was not required:

> The purpose of the statute is to allow the court to designate the commencement date in order to correct injustice when a judgment is delayed for a long period of time *for any reason*, including litigation delays.

*Id.* (internal quotation marks, citations, brackets, and ellipsis omitted; emphasis added).

To the extent that *Amfac* created a tension regarding the issue of whether fault is required for an award of prejudgment interest, we resolve it today by observing that this court meant only to signal that: (1) if fault is found on the part of the party seeking interest, denial of interest will not be considered an abuse of discretion; (2) if fault is found on the part of the party opposing interest, an award of interest will not be considered an abuse of discretion; and (3) where no fault is found on either side, the trial court may still award or deny prejudgment interest in its discretion, depending on the circumstances of the case. Indeed, this is the interpretation that emerges from decisions of the Intermediate Court of Appeals (ICA) concerning prejudgment interest in the wake of *Amfac*. In *Page v. Domino's Pizza*, the ICA cited *Amfac* and noted that "[a] trial court's denial of prejudgment interest is usually affirmed" if the requesting party caused the delay or the opposing party did not cause the delay. 80 Hawai'i 204, 209, 908 P.2d 552, 557 (App. 1995) (citations omitted). However, in *Ditto v. McCurdy*, the ICA added that "a trial court can award prejudgment interest for any substantial delay in the proceedings, and that *no purposeful delay on the part of the non-moving party is required*." 86 Hawai'i 93, 114, 947 P.2d 961, 982 (App.1997), *rev'd in part on other grounds*, 86 Hawai'i 84, 947

P.2d 952 (1997) (emphasis added). The ICA gave the basis for its reasoning as follows:

> We reiterate that prejudgment interest can be awarded when the issuance of judgment is greatly delayed for any reason. Of course, purposeful delay (or dilatory tactics) by the non-moving party, if it causes a substantial delay in the proceedings, falls within the [ ]ambit of "any reason" under the statute. By the same token, a trial court can and probably should deny prejudgment interest if the moving party was responsible for the delay. Still, the trial court is vested with the discretion to award prejudgment interest whether or not dilatory tactics are shown by either party, so long as the issuance of judgment was greatly delayed. *Leibert v. Finance Factors, Ltd.*, 71 Haw. 285, 293, 788 P.2d 833, 838 (1990) ("the purpose of the statute was to allow the court to designate the commencement date of interest in order to correct the injustice when a judgment is delayed for a long period of time for any reason, including litigation delays").

*Id.* at 115 n. 22, 947 P.2d 961, 947 P.2d at 983 n. 22.

In light of *Amfac* and its progeny, we conclude that the circuit court did not abuse its discretion in awarding prejudgment interest to TSC–Taft even though it did not find fault on the part of WWI with respect to the delay in judgment. Here, WWI had breached its insurance contract with Tri–S by early 1997, and indeed TSC–Taft sought a February 1997 commencement date for the prejudgment interest award. Nevertheless, the circuit court stated that it did not find, or seek to find, fault, but instead sought only to compensate TSC–Taft for the delay in reaching judgment. As such, it chose September 6, 2000 as the commencement day for interest because that was the first day on which the attorney's fees and costs (*i.e.*, WWI's liability for breach of its duty to defend) were reduced to a sum certain. Based on the case law, the long delay from summary judgment (granted in May 1998) to final judgment (entered in October 2003), and the reasoned basis given by the circuit court for the choice of September 6, 2000 as the commencement date for the interest award, it cannot be said that the circuit court clearly exceeded the bounds of reason or disregarded the rules of

law or practice to the substantial detriment of WWI. Accordingly, the circuit court did not abuse its discretion in awarding prejudgment interest to TSC–Taft.

## B. *Travelers' Cross–Appeal*

Like WWI, Travelers assigns a plethora of errors below. The errors alleged by Travelers can be divided into four groups: (1) pre-summary judgment procedural questions; (2) questions relating to the interpretation of the Travelers' worker's compensation and employer's liability policy; (3) questions relating to the propriety of summary judgment; and (4) post-summary judgment questions. For the reasons set forth below, we hold that, though Travelers was properly joined as a direct party defendant, the circuit court erred as a matter of law in its interpretation of the policy, such that summary judgment should have been granted in favor of Travelers and against Plaintiffs and WWI.

### 1. The Circuit Court Did Not Abuse Its Discretion in Allowing Plaintiffs to Assert Direct Claims Against Travelers.

▇▇ Travelers first argues that (1) Plaintiffs failed to comply with the strict procedural requirements of HRCP Rule 17(d) for preserving claims against Doe Defendants, and (2) the amended complaint by which Plaintiffs asserted claims against it was untimely under HRS § 657–7.5 (1993). For the reasons set forth below, we conclude that, even if the circuit court did not strictly comply with HRCP Rule 17(d), Travelers suffered no prejudice such as to warrant dismissal of the case, and, thus, any error in granting the motion for certification was harmless. Moreover, HRS § 657–7.5 is inapplicable on its face to the instant action. Accordingly, the circuit court did not abuse its discretion in allowing Plaintiffs leave to file an amended complaint to assert claims against Travelers as a party defendant.

a. *The circuit court erred in allowing the Plaintiffs to join Travelers under HRCP Rule 17(d), but that error was harmless and did not constitute an abuse of discretion.*

Travelers asserts that Plaintiffs failed to exercise due diligence and good faith in identifying it as a defendant because, far from being unknown at the time suit was filed, Travelers was known to all as Tri–S's worker's compensation carrier, and Plaintiffs' decision not to sue at the outset was simply strategic. Plaintiffs respond that because they were free to file a separate lawsuit against Travelers (*i.e.*, the statute of limitations had not run), "it was reasonable and practical to allow [them] to align their pleadings with the [third-party] claim already asserted by [WWI], rather than file a separate lawsuit for later consolidation." Though Travelers is correct in its contention that HRCP Rule 17(d) was misused, we do not believe that such misuse warrants any relief, much less summary dismissal of the claims against Travelers.

HRCP Rule 17(d) provides in pertinent part:

(1) When it shall be necessary or proper to make a person a party defendant and the party desiring the inclusion of the person as a party defendant *has been unable to ascertain the identity of a defendant,* the party desiring the inclusion of the person as a party defendant shall in accordance with the criteria of Rule 11 of these rules set forth in a pleading the person's interest in the action, so much of the identity as is known (and if unknown, a fictitious name shall be used), and shall set forth with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity.

. . . .

(3) Any party may, by motion for certification, make the name or identity of the party defendant known to the court *within a reasonable time after the moving party knew or should have known the name or identity of the party defendant.* The motion shall be supported by affidavit setting forth all facts substantiating the movant's claim that the naming or identification has been made in good faith and with due diligence. When the naming or identification is made by a plaintiff, it shall be made prior to the filing of the pretrial statement

by that plaintiff, or within such additional time as the court may allow. The court shall freely grant reasonable extensions of the time in which to name or identify the party defendant to any party exercising due diligence in attempting to ascertain the party defendant's name or identity.

(4) When a party defendant has been named or identified in accordance with this rule, the court shall so certify and may make any order that justice requires to protect any party from undue burden and expense in any further proceedings involving the party defendant.

(5) A party defendant who has been named or identified in accordance with this rule may have dismissal of one or more claims against the defendant if the defendant shows in a timely manner that the delay in naming or identifying that defendant has caused that defendant substantial prejudice and if the interests of justice so require.

(Emphases added.)

"Unlike most of the [HRCP], Rule 17(d) is not patterned after a federal rule; it was drafted by our Committee on Civil Rules[.]" *Tobosa v. Owens,* 69 Haw. 305, 316, 741 P.2d 1280, 1287 (1987). As this court has stated, a primary purpose of the rule is to "toll the statute of limitations with respect to Doe defendants who cannot be identified prior to the running of the statute." *Wakuya,* 65 Haw. at 596, 656 P.2d at 88. *See also Russell v. Attco, Inc.,* 82 Hawai'i 461, 466, 923 P.2d 403, 408 (1996) ("HRCP Rule 17(d) provides a method by which the statute of limitations may be tolled relative to a claim against the as-yet *unidentified* defendants."

(Emphasis added.)). Both with respect to plain text and purpose, then, it would appear that HRCP Rule 17(d) was an inappropriate vehicle by which to join Travelers inasmuch as Plaintiffs, as they concede, had long known of Travelers' identity, and the six-year statute of limitations for breach of contract actions was in no danger of running.[14] The question remains, however, as to whether and what sanctions might be required under the circumstances of this case for misuse of the rule.

This court has previously confronted situations involving HRCP Rule 17(d)'s apparent misuse. First, in *Wakuya,* plaintiffs filed suit against an identified defendant and various Doe Defendants. 65 Haw. at 593, 656 P.2d at 86. As in the instant case, the defendant in *Wakuya* then filed a third-party complaint, and, also as in the instant case, the plaintiffs moved for certification of the third-party defendants as the Doe Defendants several months (thirteen months, in *Wakuya* ) after they had been impleaded as third-party defendants (and thus their identity known). *Id.* at 593–94, 656 P.2d at 86–87. The circuit court then granted the Doe Defendants' motion to dismiss the action on the grounds that they had been prejudiced by the delay and lack of notice. *Id.* at 594, 656 P.2d at 87. On appeal, however, the ICA reversed and this court affirmed, holding that, as long as identification of Doe Defendants is made within a reasonable time after the filing of pretrial statements, or "the court has, even after [the pretrial statements'] filing, extended the time for identifying the Doe defendants," certification is proper. *Id.* at 597, 656 P.2d at 88. *See also Kaczmarc-*

---

**14.** Indeed, it appears that the proper vehicle for joining Travelers as a party defendant was HRCP Rule 20(a) (2000). That rule provides in pertinent part:

All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Here, Plaintiffs asserted: (1) joint, several, or alternative liability against WWI and Travelers for the costs of defense and indemnification; (2) arising out of the death of Rapoza and underly-

ing suit brought by his estate; where (3) common questions of fact regarding the fees and expenses incurred by TSC–Taft in defending the underlying suit arose. Accordingly, the requirements for permissive joinder would have been met, and Plaintiffs could have "added [Travelers] by order of the court on motion … at any stage of the action and on such terms as [we]re just." HRCP Rule 21. The motion to add Travelers could have been made under HRCP Rule 15(a) (as in fact was the motion that was ultimately made and granted in order to add Travelers after HRCP Rule 17(d) certification was allowed), which provides for motions for leave to file amended pleadings and requires that they be "freely granted."

*zyk v. City & County of Honolulu,* 65 Haw. 612, 621–22, 656 P.2d 89, 96 (1982) (applying *Wakuya* and holding that identification of Doe Defendants made three and a half months after the filing of pretrial statements was too late when no extension had been granted). Here, TSC–Taft filed its pretrial statement on March 18, 1998, but an extension of time to move for certification was granted by the circuit court, and thus the holding in *Wakuya* was not offended.

Second, in the *Tobosa* case, the plaintiffs filed a complaint naming various Doe Defendants whose identities, along with the facts giving rise to a cause of action against them, were already known to the plaintiffs at the time. *Id.* at 316, 741 P.2d at 1287. The court found in *Tobosa* that Rule 17(d) had been violated and applied an HRCP Rule 11 analysis, concluding that "[t]hough an attorney's obligation [under Rule 11] may be a moral one, a pleader who has knowledge of the identities of defendants yet files a John Doe complaint undoubtedly commits a wilful violation of [HRCP Rule 11]." *Id.* at 317, 741 P.2d at 1288 (footnote omitted). The *Tobosa* court added, however, that the remedy for such a violation is not to strike the pleading if it would serve no constructive purpose, but to hold counsel personally liable for any excess in fees and costs caused by the violation. *Id.* at 318, 741 P.2d at 1288.

Though the circuit court here erred in allowing Plaintiffs to join Travelers as a defendant under HRCP 17(d), we nevertheless conclude that *Tobosa* requires neither sanctions nor dismissal of the complaint in the instant case. First, to strike the pleading would serve no constructive purpose—had the circuit court properly denied HRCP Rule 17(d) certification of Travelers, Plaintiffs, as they argued to the circuit court, could still have brought a timely, separate action against Travelers at that point (which ultimately could, and probably would, have later been consolidated with the instant action), or they could have properly joined Travelers in the instant action under HRCP Rule 20(a). Second, sanctions are not warranted because: (1) it does not appear that Plaintiffs' motion gave rise to excessive fees and costs—indeed, they likely saved all parties additional fees

that would have been incurred in filing and consolidating a separate action; and (2) the violation of HRCP Rule 11, though knowing, was clearly not malicious or in bad faith—as Plaintiffs note, already having a judgment in their favor against WWI for the full amount of their defense costs in the underlying suit, they had no reason to delay and were only endeavoring to conform their pleadings to take account of WWI's third-party complaint against Travelers.

Finally, Travelers' claims of prejudice due to insufficient notice and opportunity for discovery lack substance. Travelers was impleaded in the instant action by WWI in April 1999, almost one year before Plaintiffs moved to amend their own complaint. Moreover, defense of the underlying suit had been tendered to Travelers in 1996. Under the circumstances, then, Travelers had ample notice of both the instant and underlying actions, as well as at least a year in which to conduct discovery in the instant action before the direct claims were asserted. Consequently, Travelers' claims of due process violations fail, and we hold that the circuit court's error in allowing the Plaintiffs to join Travelers as a party defendant by means of the wrong procedural rule was harmless.

b. *HRS § 657–7.5 is irrelevant to the instant action.*

In addition to its HRCP Rule 17(d) argument, Travelers makes a related argument under HRS § 657–7.5. That statute states:

**Third-party defendants, time in which plaintiff may amend.** When a defendant, against whom action has been timely brought, brings in a third-party defendant who is or may be liable to the defendant or to the plaintiff for all or part of the plaintiff's claim against the defendant, plaintiff within thirty days after the date of filing of the third-party defendant's answer, *may* assert against the third-party defendant any claim, arising out of the original transaction or occurrence that is also the subject matter of the third-party plaintiff's claim against the third-party defendant, which would have been timely if the third-party defendant had been joined originally as a defendant, notwithstanding any statu-

**502**

tory period of limitations otherwise applicable to plaintiff's claim. *Nothing herein shall preclude the plaintiff from asserting any claim which the plaintiff might have asserted without the benefit of this section.* (Emphases added.) Travelers argues that the word "may" in HRS § 657–7.5 actually means "must," and that the circuit court erred in not dismissing Plaintiffs' amended complaint on the basis that it was filed more than thirty days after Travelers was made a third-party defendant by WWI. As is obvious from the plain language of the statute, however, its purpose is to extend the statute of limitations with respect to parties brought in as third-party defendants; a plaintiff is explicitly *not* precluded, however, from asserting a claim that is not otherwise time-barred. As such, there is no cause to read the word "may" in any sense other than its ordinary one, which is permissive. Here, the six-year statute of limitations applicable to actions in contract had, as previously stated, not yet run; HRS § 657–7.5 is thus not germane; and therefore the circuit court did not err in allowing the Plaintiffs' amended complaint to be filed more than thirty days after Travelers was made a third-party defendant. Because the circuit court did not clearly exceed the bounds of reason or disregard any rule of law or practice to the substantial detriment of Travelers in allowing Plaintiffs leave to file their amended complaint, it did not abuse its discretion.

### 2. The Circuit Court Erred in Granting Summary Judgment in Favor of Plaintiffs and Against Travelers.

■ Travelers argues that Taft was not an insured under the Tri–S worker's compensation and employer's liability policy issued by Travelers and thus summary judgment should have been granted in its favor rather than in Plaintiffs'[15] favor. Plaintiffs respond that Travelers was obligated to indemnify Tri–S for any moneys that Tri–S was in turn obligated to expend to indemnify Taft with respect to defense and liability in the underlying action, and thus Taft was effectively an insured. The circuit court concluded that the "policy provides coverage for its insured,

Tri–S Corporation, for defense and indemnity, for its obligation to indemnify Karl M. Taft for expenses of defense and for damages claimed against Karl M. Taft as a result of injury to a Tri–S Corporation employee." As set forth below, we hold that Travelers did not have a duty to defend or indemnify *Taft*, and because its duty to defend and indemnify *Tri–S* was never breached, summary judgment should have been granted in Travelers' favor and against Plaintiffs.

First, as the circuit court noted, there is no dispute that Taft was not a named or additional insured under the policy issued by Travelers, and that Tri–S was the named insured. Second, it is also not disputed that, as set forth above, the Travelers policy provided in relevant part:

> We will pay all sums you legally must pay as damages because of bodily injury to your employees. . . .

> The damages we will pay, where recovery is permitted by law, include damages . . . for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee[.]

> . . . .

> We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. . . .

> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. . . .

Provisionally inserting the names of the parties in the instant case, where "we" is read as Travelers, "you" is read as Tri–S, the only insured under the policy, "third party" is read as Taft, and "employee" is read as Rapoza, the relevant provisions (Part II, sections B & D) yield:

> [Travelers] will pay all sums *[Tri–S] legally must pay* as damages because of bodily injury to [Rapoza]. . . .

> The damages [Travelers] will pay, where recovery is permitted by law, include dam-

**15.** For purposes of this subsection only, "Plaintiffs" includes WWI, which joined in TSC–Taft and the Rapoza Estate's motion for summary judgment against Travelers.

ages ... for which [Tri–S is] liable to [Taft] by reason of a claim or suit against [Tri–S] by [Taft] to recover the damages claimed against [Taft] as a result of injury to [Rapoza.]

. . . .

[Travelers has] the right and duty to defend, at our expense, any claim, proceeding or suit *against [Tri–S]* for damages payable by this insurance. . . .

[Travelers has] no duty to defend a claim, proceeding or suit that is not covered by this insurance.

(Emphases added.) The plain language of the policy thus clearly states that Travelers owed a duty to defend to *Tri–S*, not to Taft, and would thus not have a duty to defend Taft in the underlying suit even if it eventually might be liable for indemnification. Plaintiffs contend (and the circuit court agreed), however, that it would be unreasonable to force Tri–S to pay first and require Taft to formally make a claim against Tri–S (*i.e.,* sue himself) for indemnification in order to secure benefits under the policy.

However, even if one accepts the proposition that it would be unreasonable to require a separate indemnification claim and also that Taft would prevail on such a claim, it is not responsive to the prior question of whether the indemnification claim, formal or informal, would itself be covered under the policy. Based on the following, we hold that the answer to that question is no.

Like the CGL policy issued by WWI, the worker's compensation and employer's liability policy issued by Travelers is a form contract whose language has been interpreted previously by various courts outside this jurisdiction. The recent decision in *Missouri Employers Mut. Ins. Co. [MEMIC] v. Nichols,* 149 S.W.3d 617 (Mo.Ct.App.2004), which involves not only policy language but also facts virtually identical to those presented in the instant case, is particularly instructive. In that case, the plaintiff filed a wrongful death action against Nichols, the owner and employee of a small business, for the work-related death of her father, a co-employee of Nichols. *Id.* at 620. The business was the named insured on a worker's compensation and employer's liability policy issued by

MEMIC and containing language identical to that found in the Tri–S policy issued by Travelers. *Id.* After refusing to defend or indemnify Nichols in the wrongful death action on the basis that he was not an insured under the policy, MEMIC filed an action seeking a declaratory judgment to that effect. *Id.* at 620–21. When summary judgment was granted in favor of MEMIC in the trial court, the plaintiff in the wrongful death action appealed. *Id.* at 621.

On appeal, the plaintiff argued, as do Plaintiffs here, that even though Nichols was not a named insured under the policy, he was nevertheless covered under the provisions of Part II, sections B and D, quoted above. *Id.* at 625–26. The appellate court disagreed and affirmed the judgment below, reasoning:

[T]he appellant contends that ... coverage exists as to [the business owner-employee] in the underlying wrongful death suit, pursuant to the express language of [part II, section B]. The contention is without merit. The Policy clearly limits liability coverage to the named employer ... in such sums that it "legally must pay as damages because of bodily injury to [its] employees." [Section] B sets out the damages to be paid, *if,* and only if, [the company] is first found to be legally liable in damages. The language of section B does not create liability coverage, but simply delineates and limits the damages to be paid, provided liability is found first.

*Id.* at 627 (emphasis in original). In other words, when read as a whole, it is clear that section B covers claims only where *Tri–S* is liable for the injuries. Here, not only was Tri–S not sued in the underlying action (and hence never found liable in damages for Rapoza's death), but there is also no dispute that it is immune from liability under Hawai'i worker's compensation law (and hence never could be found liable). Therefore, Travelers had no duty to defend or indemnify.

TSC–Taft's final argument against this interpretation of the policy is that, so construed, the employer's liability section would provide no coverage for any non-worker's compensation claims and would thus be an illusory contract. TSC–Taft is correct that

employer's liability insurance is "intended to be a 'gap-filler' to provide protection from employee tort suits." *See Reliance Nat'l Ins. Co. v. Vitale*, 183 F.Supp.2d 506, 509–510 (D.Conn.2001) (noting that employer's liability insurance is "traditionally written in conjunction with workers compensation policies, and is intended to serve as a 'gap-filler,' providing protection to the employer in situations where the employee has a right to bring a tort action despite the provisions of the workers compensation statute") (citation omitted). Consequently, if there were no gaps in worker's compensation exclusivity to fill, the employer's liability policy would provide no benefits and the contract would be illusory.

However, the condition precedent to the success of TSC–Taft's illusory contract argument—namely, the contention that there are no gaps in Hawai'i worker's compensation exclusivity—fails to be met. For example, employers in Hawai'i are not immune, under worker's compensation law, from suits for negligent infliction of emotional distress. HRS § 386–5, *supra* note 3; *see also Nelson v. Univ. of Hawai'i*, 97 Hawai'i 376, 395, 38 P.3d 95, 114 (2001) (confirming that worker's compensation law exclusivity does not bar suits against an employer for negligent infliction of emotional distress). Similarly, general contractors are not immune under worker's compensation law from suits by employees of their subcontractors. HRS § 386–1; *see also Fonseca v. Pac. Constr. Co., Ltd.*, 54 Haw. 578, 585, 513 P.2d 156, 160 (1973) ("[T]hird-party general contractors are not immune [under worker's compensation law] to common law negligence actions on the part of employees of their subcontractors, absent the incidents of a true employer-employee relationship[.]"); *Crompton v. Tern Corp.*, 83 Hawai'i 1, 11, 924 P.2d 169, 179 (1996) (same). Here, the Tri–S policy issued by Travelers covers non-intentional torts resulting in bodily injury to employees, and thus would likely cover an employee's claim against Tri–S for negligent infliction of emotional distress resulting in bodily injury, as well as possibly a claim brought by an employee of a Tri–S subcontractor for bodily injury negligently inflicted by Tri–S. While the scope of coverage afforded Tri–S under the employer's liability portion of the policy appears to be limited at best, it is nevertheless more than illusory. *See Lakota v. Westfield Ins. Co.*, 132 Ohio App.3d 138, 724 N.E.2d 815, 818 (1998) (considering the same worker's compensation/employer's liability policy at issue here and rejecting the illusory contract argument because the policy was only virtually, and not completely, worthless).

For the foregoing reasons, we hold that the Tri–S worker's compensation and employer's liability policy issued by Travelers did not cover the wrongful death suit brought by the Rapoza Estate against Taft. As such, Travelers had no duty to defend or indemnify Tri–S or Taft. Therefore, the circuit court erred in granting summary judgment in favor of Plaintiffs.[16]

### IV. *CONCLUSION*

Based on the foregoing, we affirm the circuit court's October 10, 2003 final judgment in favor of Plaintiffs and against WWI, but vacate the judgment as to Travelers and remand for entry of summary judgment in its favor.

---

**16.** Because the foregoing error is dispositive, we do not reach Travelers' remaining assignments of error.