**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000084
29-OCT-2025
07:49 AM
Dkt. 71 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---oOo---

TIKI'S GRILL & BAR, LLC, Plaintiff-Appellant, v.
DTRIC INSURANCE COMPANY, LIMITED, Defendant-Appellee

NO. CAAP-22-0000084

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CCV-20-0001213)

OCTOBER 29, 2025

WADSWORTH, PRESIDING JUDGE, AND McCULLEN AND GUIDRY, JJ.

OPINION OF THE COURT BY WADSWORTH, J.

This appeal stems from an insurance coverage dispute between Plaintiff-Appellant Tiki's Grill & Bar, LLC (**Tiki's**) and Defendant-Appellee DTRIC Insurance Company, Limited (**DTRIC**). Tiki's had a commercial insurance policy with DTRIC (**Policy**) that covered lost business income due to the suspension of operations "caused by direct physical loss of or damage to property at premises." In late March 2020, following the start of the COVID-19 pandemic, the owner of the hotel in which Tiki's restaurant was located nailed wooden boards across the hotel's entrances and exits, blocking physical access to the restaurant. Tiki's submitted a claim to DTRIC under the Policy. DTRIC denied the claim, asserting that Tiki's business interruption was caused by the government's COVID-related orders and not by direct physical loss of or damage to the premises, and, in any event, a "virus

exclusion" in the Policy precluded coverage for the claimed loss or damage.  Tiki's sued DTRIC, seeking a declaratory judgment that DTRIC was obligated to cover Tiki's claim.  The Circuit Court of the First Circuit (**Circuit Court**) ruled in favor of DTRIC, granting its motion for summary judgment.[1]

Tiki's appeals from the Circuit Court's Final Judgment, entered on January 26, 2022.  Tiki's also challenges the Circuit Court's "Order Granting . . . DTRIC['s] Motion for Summary Judgment" (**Summary Judgment Order**), entered on January 25, 2022.

On appeal, Tiki's contends that the Circuit Court erred in granting summary judgment in DTRIC's favor.  Specifically, Tiki's argues that the Circuit Court "erroneously construed the Policy as not providing coverage where [Tiki's] business interruption was caused by the direct physical loss of or damage to the physical access points of premises because it was caused by the placement of physical barriers at those points by a third person."

We hold that the Circuit Court erred in concluding that Tiki's claim for lost business income was not covered by the Policy as a matter of law.  The relevant language of the Policy can reasonably be read to cover the insured's suspension of operations caused by the loss of physical access to its property due to the imposition of a physical barrier.  Here, Tiki's presented evidence that its business interruption was caused by a third party's imposition of physical barriers that blocked Tiki's access to its leased space, thus preventing it from engaging in any business within its space, including permitted carry out and delivery service.  Tiki's thus presented a genuine issue of material fact as to whether its business interruption was "caused by direct physical loss of or damage to property" at the premises.  In these circumstances, DTRIC also failed to establish that any exclusion in the Policy precluded coverage as a matter of law.  Accordingly, we vacate the Final Judgment and the Summary Judgment Order and remand the case to the Circuit Court.

---

[1]  The Honorable James H. Ashford presided.

## I. Background

Based on the parties' respective summary judgment submissions, and unless otherwise indicated, the following facts appear to be uncontroverted.

### A. Tiki's Business Interruption

Tiki's operates a restaurant and bar in the Aston Waikiki Beach Hotel (the **Hotel**) known as "Tiki's Grill & Bar." Tiki's leases third-floor indoor and outdoor commercial space within the Hotel, overlooking Waikiki Beach. Tiki's also offers service throughout the Hotel by room service and at poolside and other open space venues within the Hotel. All of Tiki's ingress and egress points are within the structure of the Hotel.

On March 4, 2020, then-Governor David Y. Ige issued a Proclamation declaring a state of emergency relating to the COVID-19 pandemic. The same day, then-Honolulu Mayor Kirk W. Caldwell issued a similar proclamation.

On March 16, 2020, Governor Ige issued a Supplementary Proclamation, which, among other things, directed "[a]ll residents . . . to heed any orders and guidance of federal and state public health officials, including but not limited to, the imposition of social distancing measures, to control the spread of COVID-19." On March 20, 2020, Mayor Caldwell issued an emergency order requiring, among other things, that all restaurants close for 15 calendar days, "except solely for drive-thru, pickup, or delivery service[.]"

On March 26, 2020, Governor Ige issued a Second Supplementary Proclamation relating to the COVID-19 pandemic. With certain exceptions, all persons entering the state were subject to a mandatory 14-day self-quarantine period.

On or about March 25, 2020, the owner of the Hotel boarded up all entries and ground floor windows to the Hotel building, thus blocking all ingress to (and egress from) Tiki's, by both Tiki's employees and the public. With these barriers in place, Tiki's could not access its leased premises, including its kitchen and bar areas, and was unable to engage in any business,

including carry out and delivery service to guest rooms, poolside and other locations within the Hotel building. The board barriers remained in place from March 25, 2020, until July 31, 2020, when the boards were removed. The Hotel reopened on August 2, 2020, and Tiki's reopened on August 6, 2020.

Tiki's asserts that neither the Hotel closure nor the boarding up of the premises was required by any governmental order, and that hotels were actually encouraged to remain open under various orders by Governor Ige and Mayor Caldwell throughout the Spring and Summer of 2020. Tiki's further asserts that it was permitted by law to resume indoor table service dining from June 5, 2020,[2] and bar service from June 19, 2020.

## B. The Policy

Tiki's maintained a commercial insurance policy issued by DTRIC for the relevant time period. The Policy provided coverage for personal property and business income, including extra expense, at Tiki's Waikiki location.

As relevant here, the Policy's "BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM" (**Business Income Form**) states in pertinent part:

>    A.    Coverage
>
>    1.    **Business Income**
>
>        Business Income means the:
>
>        a.    Net Income (Net profit or Loss before
>              income taxes) that would have been earned
>              or incurred; and
>
>        b.    Continuing normal operating expenses
>              incurred, including payroll.
>
>        For manufacturing risk, Net Income includes the
>        net sales value of production.
>
>        . . . .
>
>        We will pay for the actual loss of Business Income you
>        sustain due to the necessary "suspension" of your

---

[2]    On June 3, 2020, Mayor Caldwell amended his previous orders to permit table service dining beginning June 5, 2022, subject to capacity limitations and social distancing requirements.

"operations" during the "period of restoration".[3/]
The "suspension" must be caused by direct physical
loss of or damage to property at premises which are
described in the Declarations and for which a Business
Income Limit of Insurance is shown in the
Declarations.  The loss or damage must be caused by or
result from a Covered Cause of Loss. . . .

------

[3/]     The Business Income Form defines the terms in quotation marks in relevant part, as follows:

**F.     Definitions**

. . . .

**2.**     "Operations" means:

    **a.**     Your business activities occurring at the described premises; and

    **b.**     The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.**     "Period of Restoration" means the period of time that:

    **a.**     Begins:

        **(1)**     72 hours after the time of direct physical loss or damage for Business Income coverage; or

        **(2)**     Immediately after the time of direct physical loss or damage for Extra Expense coverage;

        caused by or resulting from any Covered Cause of Loss at the described premises; and

    **b.**     Ends on the earlier of:

        **(1)**     The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        **(2)**     The date when business is resumed at a new permanent location.

. . . .

**6.**     "Suspension" means:

    **a.**     The slowdown or cessation of your business activities; or

    **b.**     That a part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

> With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:
>
> > a.  The portion of the building which you rent, lease or occupy; and
> >
> > b.  Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.
>
> . . . .
>
> **3.  Covered Causes Of Loss, Exclusions And Limitations**
>
> > See applicable Causes of Loss Form as shown in the Declarations.
>
> . . . .
>
> **5.  Additional Coverages**
>
> > . . . .
> >
> > **b.  Alterations And New Buildings**
> >
> > > We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:
> > >
> > > > **(1)**  New buildings or structures, whether complete or under construction;
> > > >
> > > > **(2)**  Alterations or additions to existing buildings or structures;
> > > >
> > > > . . . .
> > >
> > > If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

(Footnote added.)

The "applicable Causes of Loss Form," referenced above in Paragraph A.3., appears to be a form entitled "CAUSES OF LOSS - SPECIAL FORM" (**Causes of Loss Form**).  That form states in relevant part:

> **A.  Covered Causes Of Loss**
>
> When Special is shown in the Declarations, Covered

Causes of Loss means Risks Of Direct Physical Loss[4] unless the loss is:

1.      Excluded in Section **B.**, Exclusions; or

2.      Limited in Section **C.**, Limitations;

that follow.

**B.**    **Exclusions**

1.      We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a.**    Ordinance Or Law

   The enforcement of any ordinance or law:

   **(1)**    Regulating the construction, use or repair of any property; or

   . . . .

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(1)**    An ordinance or law that is enforced even if the property has not been damaged; or

   **(2)**    The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   . . . .

2.      We will not pay for loss or damage caused by or resulting from any of the following:

   . . . .

   **b.**    Delay, loss of use or loss of market.

The Policy also contains an "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" (**Virus Exclusion**), which provides in relevant part:

**A.**    The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income,

---

[4]    The phrase "Risks Of Direct Physical Loss" is not defined in the Policy.

7

extra expense or action of civil authority.

**B.**    We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.**    With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

. . . .

**E.**    The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

## C.  **The Claim and Denial**

On June 18, 2020, Tiki's, through its insurance agent, submitted a claim (**Claim**) to DTRIC under the Policy. The Claim was described as a "Business Interupption [sic] claim due to hotel closing doors and limited operating service." An attached email from Tiki's managing member, William Tobin (**Tobin**), explained that "the hotel has been closed and boarded up - since approximately March 25, 2020"; "[t]ake out and delivery have been allowed during this entire time"; "[f]ull-service dine-in has been allowed since June 5, 2020"; and "[b]ecause we are known for having outdoor seating, we are currently missing out on the pent up demand . . . ."

DTRIC denied the Claim in a letter dated July 9, 2020. The letter stated in part:

From the information provided to date, it appears the Claim arises out of guidelines and orders issued by state and local authorities to encourage "social distancing" and minimize person-to-person contact during the COVID-19 pandemic. While this appears to have resulted in the closure of your business or curtailment of your regular business activity, there has been no showing, at the present time, of direct physical loss of or damage to the Property described in the Declarations of your Policy. To the extent there has been any loss, it does not appear to have been caused by direct physical loss of or damage to property at premises which are described in the Declarations, as required for coverage under the Policy.

Further, it also appears that the "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" is applicable to your Claim. This

> exclusion precludes coverage for loss or damage caused by or resulting from any virus that induces or is capable of inducing physical distress, illness or disease. This exclusion applies to all forms and endorsements that comprise the Policy's Commercial Property coverage.

## D.  Proceedings in the Circuit Court

Tiki's filed the operative First Amended Complaint against DTRIC on September 3, 2020. Tiki's alleged, among other things, that:  (1) on or about March 25, 2020, it "was excluded from the insured premises located within the . . . Hotel . . . , and thereafter prevented from conducting any business on the premises and within other areas of the [H]otel"; (2) "[t]he [H]otel . . . was . . . closed down and boarded up thereby preventing [Tiki's] from physically accessing its business premises"; (3) "[Tiki's] was thus prevented, by the physical closure of the building by a third party, from using its premises and generating business income thereby, including . . . from outside dining and/or take-out service during times when indoor dining was not permitted by government regulation"; (4) Tiki's submitted the Claim to DTRIC; (5) DTRIC informed Tiki's that DTRIC would not cover the Claim under the Policy; and (6) "[t]here is an actual and continuing controversy between [Tiki's] and DTRIC as to the coverage available to [Tiki's] under the [P]olicy . . . ."  Tiki's sought "[a] declaratory judgment finding and declaring that DTRIC is obligated to cover [Tiki's] for its Claim in whole or in part[,]" as well as other appropriate relief.

DTRIC answered the Complaint on September 24, 2020. DTRIC denied that the Policy covers the loss claimed by Tiki's and further denied Tiki's allegation that it "has suffered a direct 'physical loss' of the covered premises" or that it "has suffered loss of business revenue as a direct and proximate cause of such physical loss."

On July 16, 2021, DTRIC filed its motion for summary judgment. DTRIC sought summary judgment on two grounds:  (1) Tiki's business income claim was not covered under the Policy because there was no direct physical loss or damage to Tiki's property or any other relevant property; and (2) the Policy's

Virus Exclusion precluded coverage of Tiki's claim. DTRIC requested that the Circuit Court take judicial notice of certain COVID-related proclamations and orders issued by Governor Ige and Mayor Caldwell at the start of the COVID pandemic, and relied on cases in other jurisdictions purportedly concluding there was no "direct physical loss of or damage to property" "where business losses stem from shutdowns or a decline in business caused by the COVID-19 pandemic[.]" As to the Virus Exclusion, DTRIC argued: "[Tiki's] contends its loss flows from the decision of the [H]otel . . . to shut down and board up its premises during the early months of the COVID pandemic in response to government orders and the dramatic drop in visitor arrivals. However, because the . . . Hotel's temporary shutdown was clearly precipitated by the COVID pandemic, which in turn was caused by a virus, the exclusion plainly applies."

On September 13, 2021, Tiki's filed its opposition to the summary judgment motion. Tiki's argued that: (1) the Policy covered Tiki's claimed loss because it resulted from a physical loss of the premises when ingress and egress were physically cut off by the boarding up of the Hotel; and (2) the Virus Exclusion was inapplicable because, at most, the virus was a remote or concurrent cause of Tiki's loss, and such causes were not included in the exclusion. Tiki's submitted the declaration of Tobin, who stated, among other things:

> 10. Neither the Hotel closure nor the physical boarding up of the premises was required by any governmental order; in fact, hotels were actually encouraged to remain open under various orders by Governor Ige and Mayor Caldwell throughout the Spring and Summer, 2020. No government law or ordinance, and no virus, required the Hotel completely to shutter its business and board up, causing Tiki's to lose its property and base of operations. Importantly, from June 5, 2020, Tiki's was permitted by law to resume table service dining within the premises, and bar service from June 19, 2020.
>
> 11. Although there were some limitations placed upon various businesses by Covid-related orders, such orders did not require the Hotel or Tiki's to cease all business activity. Indeed, Tiki's, like the Hotel, was identified as an "essential business." Restaurant operators in Honolulu have been permitted to prepare and provide food by carry out and delivery throughout the pandemic.
>
> 12. Even when the restaurant's indoor dining was prohibited under certain government orders, Tiki's was

10

permitted to continue serving customers by carry out (takeout) and delivery.

13.     However, as a consequence of the Hotel's boarding up, Tiki's was prevented from accessing its premises, including its kitchen and bar areas, and thus was physically prevented from engaging in any business within its leased premises, including carry out and delivery service to guest rooms, poolside, and other locations within the Hotel building.  Even when there were limitation under various Covid-related orders -- for example indoor dining restrictions -- substantial components of Tiki's operations were always permitted lawfully to continue.

Tiki's attached photos of the boards affixed to the Premises.

Tobin's declaration also described Tiki's claim, as follows:

18.   Tiki's made the business loss claim under the Policy to recover the income of those parts of Tiki's business that were permitted, if not encouraged, by the State and City orders to continue in operation.  Tiki's does not claim that Tiki's business operations, or any part of them, were interrupted by the presence of Covid virus on the insured premises or that Tiki's should be compensated for losses on business that government orders would not have permitted to carry out even if the Hotel was not boarded up.

The motion was heard on September 21, 2021.

On January 25, 2022, the Circuit Court issued the Summary Judgment Order.  It stated in relevant part:

[T]he Court GRANTS [DTRIC's] Motion.

The Court is persuaded by and agrees with the analysis in Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co., 939 F. Supp. 2d 1059 (D. Haw. 2013)[,] and Waikiki Sports Hawaiʻi Inc. dba Sand People v. Fireman's Fund Ins. Co., 2020 WL 6562332 (N.D. Cal.[] Nov. 9, 2020), cited by [DTRIC].  The Court finds that the shutdown that is the basis for [Tiki's] claim is not covered by the insurance policy at issue.

This appeal followed.

## II.  Standard of Review

We review the Circuit Court's grant of summary judgment *de novo*.  See Allstate Ins. Co. v. Pruett, 118 Hawaiʻi 174, 178, 186 P.3d 609, 613 (2008) (citing State ex. rel. Anzai v. City and Cnty. of Honolulu, 99 Hawaiʻi 508, 514, 57 P.3d 433, 439 (2002); Bitney v. Honolulu Police Dep't, 96 Hawaiʻi 243, 250, 30 P.3d 257, 264 (2001)).

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and

11

> admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to
> judgment as a matter of law.  A fact is material if
> proof of that fact would have the effect of
> establishing or refuting one of the essential elements
> of a cause of action or defense asserted by the
> parties.  The evidence must be viewed in the light
> most favorable to the non-moving party.  In other
> words, we must view all of the evidence and inferences
> drawn therefrom in the light most favorable to the
> party opposing the motion.

Pruett, 118 Hawaiʻi at 178-79, 186 P.3d at 613-14 (quoting Kahale
v. City and Cnty. of Honolulu, 104 Hawaiʻi 341, 344, 90 P.3d 233,
236 (2004)).

### III.  Discussion

Tiki's contends that the Circuit Court erred in
granting summary judgment in DTRIC's favor.  Tiki's argues that:
(1) the Policy provides coverage for loss of business income due
to the "suspension" of business operations "caused by direct
physical loss of or damage to property at premises which are
described in the Declarations"; (2) "[t]he coverage clause
reasonably encompasses the inability to physically access and
physically use premises and all the property therein caused by a
third party nailing wooden boards over access points, thus
physically destroying the access points _and_ blocking all physical
access to the premises"; (3) "[b]ecause [Tiki's] loss of income
and suspension of operations was caused by the physical placement
of barriers by a third party that physically eliminated all
physical access to and use of the premises and the property
within them, [Tiki's] suffered a loss of income 'caused by
physical loss of or damage to property at premises which are
described in the [D]eclarations'"; (4) "[t]he loss thus fell
within the reasonable meaning of the Policy's coverage clause,"
and the Circuit Court's conclusion that it did not was wrong; and
(5) no alternative ground exists to affirm the Circuit Court's
decision, because no exclusion in the Policy applies to defeat
coverage.

In response, DTRIC contends that the Circuit Court did
not err, because Tiki's did not suffer a "direct physical loss of
or damage to" its property as required by the Policy.  DTRIC

12

FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

argues: "Tiki's does not allege that the Coronavirus was ever present on the insured premises (including the areas of the hotel prov[id]ing ingress and egress to Tiki's restaurant). Instead, Tiki's alleges a loss of use, which absent direct physical loss or damage does *not* trigger coverage under a property insurance policy." (Footnote omitted.) Relying on certain cases construing the phrase "direct physical loss or damage" or otherwise involving government COVID orders, DTRIC asserts: "The fact that Tiki's claims its loss is the result of its landlord shutting down and boarding up the hotel in which [Tiki's] business is located — and not the direct result of a government shutdown order — does not materially distinguish this case from [others] involving claims arising from COVID shutdown orders. The common denominator for all these cases is still a loss of business income caused by a loss of access to clientele, unaccompanied by permanent dispossession or physical damage to property." DTRIC further argues that in any event, the Policy expressly excludes from coverage loss or damage caused by or resulting from "loss of use" and loss or damage caused by or resulting from "any virus . . . that induces or is capable of inducing physical distress, illness or disease."

Because the parties' arguments require us to interpret the terms of an insurance policy, we discuss applicable principles before analyzing the specific terms at issue.

## A. Principles Concerning the Interpretation of Insurance Policies

Insurance policies are contracts; their construction is a question of law. See Tri-S Corp. v. Western World Ins. Co., 110 Hawaiʻi 473, 489, 135 P.3d 82, 98 (2006). And because they are contracts, "[i]nsurance policies . . . are interpreted using the general rules of contract construction." Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 155 Hawaiʻi 108, 118, 557 P.3d 837, 847 (2024) (citing St. Paul Fire and Marine Ins. Co. v. Bodell Constr. Co., 153 Hawaiʻi 381, 383, 538 P.3d 1049, 1051 (2023)). "[T]he terms of the policy should be interpreted according to their plain, ordinary, and accepted

13

sense in common speech unless it appears from the policy that a different meaning is intended.  Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy."  <u>Dairy Rd. Partners v. Island Ins. Co.</u>, 92 Hawaiʻi 398, 411, 992 P.2d 93, 106 (2000) (brackets, quotation marks, and citations omitted); <u>see</u> <u>Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.</u>, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("[W]e must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations." (citing <u>Globe Indem. Co. v. Texeira</u>, 230 F. Supp. 451 (D. Haw. 1964))).

The Hawaiʻi Supreme Court has also recognized:

> [I]nsurance contracts are particularly one-sided contracts. Power dynamics shape this court's interpretation.  Insurance policies are considered contracts of adhesion.  <u>Dairy Rd. Partners v. Island Ins. Co., Ltd.</u>, 92 Hawaiʻi 398, 411-12, 992 P.2d 93, 106-07 (2000).  They often (like here) use insurance industry standard forms.  <u>Id.</u>  Thus, we construe any ambiguity in the policy for the policyholder and against the insurer.  <u>St. Paul</u>, 153 Hawaiʻi at 383, 538 P.3d at 1051.  We read the contract to the policyholder's advantage. <u>Id.</u>

<u>Aloha Petroleum</u>, 155 Hawaiʻi at 118, 557 P.3d at 847; <u>see</u> <u>Pruett</u>, 118 Hawaiʻi at 182, 186 P.3d at 617 ("[B]ecause insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and the ambiguities must be resolved against the insurer." (quoting <u>Dairy Rd. Partners</u>, 92 Hawaiʻi at 411-12, 992 P.2d at 106-07)).  Relatedly, "[insurance] policies are to be construed in accord with the reasonable expectations of a layperson."  <u>Pruett</u>, 118 Hawaiʻi at 182, 186 P.3d at 617 (quoting <u>Dairy Rd. Partners</u>, 92 Hawaiʻi at 412, 992 P.2d at 107).

## B.  The Policy's Coverage Clause

We begin with the operative language of the Policy's coverage clause (**Coverage Clause**).  As stated in Business Income Form paragraph A.1., <u>supra</u>, the Policy provides coverage for "the actual loss of Business Income [the insured] sustain[s] due to

the necessary 'suspension' of [its] 'operations' during the 'period of restoration'.  The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations . . . ."

DTRIC moved for and obtained summary judgment on the ground that Tiki's claim for lost business income was not covered by the Policy, in that Tiki's would be unable to show that its suspension of operations was "caused by direct physical loss of or damage to property" at the relevant "premises."  The parties do not appear to dispute the meaning of the term "premises." For purposes of coverage requirements, the Policy plainly makes no distinction between Tiki's leased premises and the areas of the Hotel that "service[]," or are used "to gain access to" Tiki's.  Instead, the primary focus of the parties' briefs, and therefore this court's analysis, is the meaning of the phrase "caused by direct physical loss of or damage to property."

We first examine the phrase "direct physical loss of or damage to property."  It is not defined in the Policy.  Tiki's contends that "the phrase 'loss of *or* damage to' can reasonably be construed to mean that 'loss' is separate and distinct from 'damage,' and loss _thus can occur even in the absence of damage_, although here [Tiki's] contends there is both 'physical damage' (existing physical structures physically altered by having wooden boards nailed to them) and 'physical loss' (the inability to physically enter and use the premises because of a physical barrier, whether that barrier is considered 'damage' or not)." In response, DTRIC argues that, assuming "loss" and "damage" mean different things, "courts addressing this argument in the COVID-19 coverage context have explained that while 'direct physical damage' refers to property that has been physically damaged but can be repaired, 'direct physical loss' refers to the permanent dispossession of property that has been destroyed or stolen and thus cannot be repaired."  DTRIC asserts that "a loss of access to clientele, unaccompanied by permanent dispossession or physical damage to property" does not constitute direct physical loss or damage to property.

15

We conclude that the phrases "physical loss of" and "[physical] damage to," as used in the Policy, must have separate meanings, even if those meanings overlap. To conclude otherwise would render one or the other phrase superfluous. We must give effect to every term of the Policy and avoid rendering any term meaningless. See Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawaiʻi 286, 297, 141 P.3d 459, 470 (2006); see also In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig., 521 F. Supp. 3d 729, 741 (N.D. Ill. 2021) (construing the phrase "direct physical loss of or damage to" in a policy containing business interruption coverage: "The disjunctive 'or' in that phrase means that 'physical loss' must cover something different from 'physical damage.'"); Nautilus Grp., Inc. v. Allianz Glob. Risks US, No. C11-5281BHS, 2012 WL 760940, at *7 (W.D. Wash. Mar. 8, 2012) (construing similar phrase in commercial insurance policy: "[I]f 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous. The fact that they are both included in the grant of coverage evidences an understanding that physical loss means something other than damage.").

Next, we focus on the meaning of the phrase "direct physical loss of . . . property." The Policy does not define this phrase or any of its component terms.[5] Under our governing principles of construction, we must give these terms their plain and ordinary meaning unless it appears that a different meaning was intended; we must construe these terms as a layperson would reasonably expect. Pruett, 118 Hawaiʻi at 182, 186 P.3d at 617 (quoting Dairy Rd. Partners, 92 Hawaiʻi at 412, 992 P.2d at 107). Merriam-Webster provides several definitions of the adjective "direct," the most relevant being "characterized by close logical, causal, or consequential relationship." Direct, Merriam-Webster Online Dictionary, https://www.merriam-webster. com/dictionary/direct (accessed Oct. 17, 2025). This definition spills over to the Policy's requirement that the suspension of operations be "caused by" direct physical loss of property. See

---

[5] Similarly, the Policy does not define the phrase "direct physical . . . damage to property" or any of its component terms.

16

Acorn Inv. Co. v. Mich. Basic Prop. Ins. Ass'n, No. 284234, 2009 WL 2952677, at *2 (Mich. Ct. App. Sept. 15, 2009) (defining "direct" in "direct physical loss" as "'immediate' or 'proximate' cause, as distinct from remote or incidental causes"). "Physical" in this context is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature." Physical, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/physical (accessed Oct. 17, 2025). "Loss" in this context can mean "the act or fact of being unable to keep or maintain something," or "the harm of privation resulting from losing or being separated from . . . something."[6] Loss, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/loss (accessed Oct. 17, 2025); see also Webster's Encyclopedic Unabridged Dictionary 1137 (1996 ed.) (defining loss as "detriment, disadvantage, or deprivation from failure to keep, have, or get"). Accordingly, the phrase "direct physical loss of . . . property" at the premises can reasonably be construed to mean the deprivation of physical access to property at the premises due to the imposition of a physical barrier. This construction is reinforced by the Policy's definition of "premises," which includes "[a]ny area within the building . . . at which the described premises are located, if that area . . . is used to gain access to, the described premises." (Emphasis added.)

The Policy's Coverage Clause further provides that "[t]he loss . . . must be caused by or result from a Covered Cause of Loss[,]" which under the Causes of Loss Form (see supra) means a "Risk[] Of Direct Physical Loss . . . ." The latter phrase is not defined in the Policy. Merriam-Webster defines "risk" in the first instance as "possibility of loss or injury." Risk, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/risk (accessed Oct. 17, 2025). Putting the coverage text together with this definition, a covered

---

[6]    "Loss" can also mean "destruction, ruin." Loss, Merriam-Webster dictionary, www.merriam-webster.com/dictionary/loss (accessed Oct. 17, 2025) (capitalization altered). To the extent the term "loss," as used in the Policy, is ambiguous, it must be construed in favor of the insured. See Aloha Petroleum, 155 Hawaiʻi at 118, 557 P.3d at 847.

17

business suspension must be caused by "direct physical loss of . . . property" at the premises, and then the loss itself must be caused by or result from the possibility of a direct physical loss — a seemingly circular requirement in this context. There would appear to be no dispute that the loss of physical access to property that is blocked by a barrier can result from the possibility of such a loss. To the extent the phrase "Risk[] Of Direct Physical Loss" is ambiguous, it must be construed in favor of the insured. See Aloha Petroleum, 155 Hawaiʻi at 118, 557 P.3d at 847. So construed, the Policy's Coverage Clause can reasonably be read to cover the suspension of operations caused by the deprivation of physical access to property due to the imposition of a physical barrier.

In resisting coverage, DTRIC relies in part on the phrase "Period of Restoration" in the Coverage Clause, which states the time period during which lost business income is covered, and which "[e]nds on the earlier of" "[t]he date when the property at the described premises should be repaired, rebuilt[,] or replaced with reasonable speed and similar quality" or "[t]he date when business is resumed at a new permanent location." DTRIC contends that this phrase implies that covered physical loss or damage is tangible, requiring a physical injury to property rather than solely loss of use.

We are not persuaded. As defined in the Policy, the "Period of Restoration" merely describes the time period of coverage; it does not state what is and is not covered. The Policy explicitly covers lost business income due to a suspension of operations caused by direct physical loss of property, not just damage to property. See supra. Morever, the phrase "[t]he date when the property at the described premises should be repaired," when read with the definition of "premises," can reasonably be construed in this context to refer to the date when the nailed planks blocking the entrance to the Hotel should have been (or were) physically removed to restore access. Again, any ambiguity in this language must be resolved in favor of the insured. See Aloha Petroleum, 155 Hawaiʻi at 118, 557 P.3d at 847.

Other courts have held that tangible damage such as physical alteration or destruction is not required to trigger coverage under insurance policies that use the phrase "physical loss of or damage to" property or similar language.  See, e.g., Soc'y Ins., 521 F. Supp. 3d at 742-43 (applying the law of Illinois and several other states in ruling that "direct physical loss of property" can include the loss of physical use of the covered property); Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts, No. CV-01-1362-ST, 2002 WL 31495830, at *9 (D. Or. June 18, 2002) (applying Oregon law in ruling that the inability to inhabit a house may be a "direct" and "physical" loss covered by insurance"); American Guar. & Liab. Ins. Co. v. Ingram Micro, Inc., No. 99-185 TUC ACM, 2000 WL 726789, at *6 (D. Ariz. April 18, 2000) (ruling that "'physical damage' is not restricted to the physical destruction or harm of computer circuitry but includes loss of access, loss of use, and loss of functionality").  Moreover, here, Tiki's maintains there was in fact a physical alteration of the premises that blocked access to its leased space.

In granting DTRIC's motion for summary judgment, the Circuit Court relied on two cases that we find of limited persuasive value given the rather unique circumstances of this case:  Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co., 939 F. Supp. 2d 1059 (D. Haw. 2013), and Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co., 499 F. Supp. 3d 670 (N.D. Cal. 2020).

In AOAO Imperial Plaza, the court, applying Hawaiʻi law, ruled that the plaintiff owners' association established insurance coverage for arsenic damage to its real property under policy language requiring that the property suffer "direct physical loss or damage."  939 F. Supp. 2d at 1068-69.  In reaching this conclusion, the court stated:

> The term "direct physical loss or damage" is not defined in the Policy.  *Black's Law Dictionary* defines "Damage" as "Loss or injury to a person or property."  Black's Law Dictionary 445 (9th ed. 2009).  The term "direct loss" is defined as "a loss that results immediately and proximately from an event."  Black's Law Dictionary 1030 (9th ed. 2009).  While the term "immediate" may be defined differently depending on the context; the Court adopts the following

> definition: "Having a direct impact; without an intervening agency." Id. at 816. "Physical" means "of or relating to natural or material things." Merriam–Webster, Webster's Third New International Dictionary 1706 (3rd ed. 2002). "Material" is defined as "[o]f or relating to matter; physical." Black's Law Dictionary 1066 (9th ed. 2009). Based on these terms, Plaintiff must demonstrate that an event had a direct impact and proximately caused a loss related to the physical matter of the Property.

Id. (footnotes and record citations omitted).

Here, Tiki's alleges and has presented evidence that an event — *i.e,* the boarding up of the Hotel and the resulting loss of physical access to the restaurant — directly caused a loss related to "the physical matter" of property at the premises. The ruling in AOAO Imperial Plaza thus *supports* Tiki's argument.

In Water Sports, the court, applying Hawaiʻi law, ruled that "the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to' covered property as required under" the 'lost business income' and 'civil authority' provisions of a commercial insurance policy. 499 F. Supp. 3d at 673. There, the plaintiff "assert[ed] that it adequately alleged closure [of its businesses] because of the 'imminent' threat of coronavirus at [its] properties." Id. at 674. The court concluded that the plaintiff had "not alleged any *direct physical* anything that happened to or at its specific properties. Moreover, it has not been dispossessed or deprived *of* any specific property[.]" Id. at 677.

Here, in contrast, Tiki's alleged and presented evidence that the boarding up of the Hotel caused a "direct physical loss of" property at the premises, resulting in Tiki's inability to engage in any business within its space, including carry out and delivery service to guest rooms, poolside and other locations within the Hotel building. In other words, Tiki's presented evidence that it was effectively deprived or dispossessed of its leased premises. The Water Sports ruling is readily distinguished on this basis.

DTRIC cites a number of cases from other jurisdictions purportedly holding that an insured's loss of business as a result of the COVID pandemic (or related government closure orders) does not constitute "direct physical loss of or damage to" property within the meaning of a property insurance policy.

But none of these cases addresses a situation comparable to what we have here. Tiki's presented evidence that the suspension of its operations was caused by a third party's imposition of physical barriers that blocked Tiki's from accessing its leased space, thus preventing it from engaging in any business within its space, including carry out and delivery service allegedly permitted under government orders. Tiki's also presented evidence that neither the Hotel closure nor the boarding up of the premises was required by any governmental order, and the COVID virus itself was not the direct cause of Tiki's loss. Causation in the coverage context is generally an issue of fact. See Advanced Indicator & Mfg., Inc. V. Acadia Ins. Co., 50 F.4th 469, 476 (5th Cir. 2022); see also Great Am. All. Ins. Co. v. Sir Columbia Knoll Assocs. Ltd. P'ship, 484 F. Supp. 3d 946, 965 (D. Or. 2020) ("Generally, if the facts are disputed, or different inferences may be drawn from undisputed facts, the question of the 'efficient proximate cause' of a loss is for the jury." (quoting Naumes, Inc. v. Landmark Ins. Co., 849 P.2d 554, 555 (1993))). Here, Tiki's presented a genuine issue of material fact as to whether its suspension of operations was "caused by direct physical loss of or damage to property" at the premises described in the Declarations. (Emphasis added.) The Circuit Court therefore erred in concluding that Tiki's claim for lost business income was not covered by the Policy's Coverage Clause as a matter of law.[7]

## C.  The Policy's Exclusions

DRTIC contends that the Policy excludes from coverage loss or damage caused by or resulting from an insured's "loss of use" of its premises in the absence of physical loss or damage to those premises. DTRIC further contends that the Policy – specifically the Virus Exclusion – excludes loss or damage caused by or resulting from "any virus . . . that induces or is capable

---

[7]     Because Tiki's presented a genuine issue of material fact as to whether its suspension of operations was caused by direct physical loss of property, we need not decide whether it presented a genuine issue of material fact as to direct physical damage to property within the meaning of the Policy.

of inducing physical distress, illness or disease."  In response, Tiki's argues that neither exclusion applies to defeat coverage.

The Hawai'i Supreme Court has made clear that the insurer carries the burden of proof that an exclusionary clause applies:

> We think the better rule is that whenever the insurer relies on an exclusionary clause of a policy as a defense to liability, it has the burden of proving facts which bring the case within the exclusion.  This rule is not only consistent with the general rules of pleading and evidence, but also appears to be the general rule elsewhere.

Quinn v. Wilshire Ins. Co., 53 Haw. 19, 21, 486 P.2d 59, 60 (1971) (citing several cases); Webb v. OSF Inernational, Inc., 156 Hawai'i 28, 36, 569 P.3d 447, 455 (2025) (quoting Quinn, 53 Haw. at 21, 486 P.2d at 60).  "In addition, any ambiguity in an exclusionary clause is construed in favor of the insured and 'strictly construed against the insurer.'"  C. Brewer & Co. v. Marine Indem. Ins. Co. of Am., 135 Hawai'i 190, 196, 347 P.3d 163, 169 (2015) (quoting Retherford v. Kama, 52 Haw. 91, 470 P.2d 517 (1970)).

DTRIC relies on the following language in the Causes of Loss Form as excluding from coverage loss or damage caused by or resulting from "loss of use":

**B.** **Exclusions**

. . . .

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

. . . .

**b.** Delay, loss of use or loss of market.

The Policy does not define the phrase "loss of use" or otherwise specify the loss of use of what property by what means the Policy seeks to exclude.  Relatedly, the phrase "caused by or resulting from . . . loss of use" is ambiguous, when the Policy is viewed as a whole.  (Emphasis added.)  At multiple places in the Policy, the phrase "caused by or resulting from" is expanded to include the terms "directly or indirectly" and "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

22

(Emphasis added.)  For example, the exclusion immediately preceding the exclusion for "[d]elay, loss of use or loss of market" states:

> **B.    Exclusions**
>
> **1.**    We will not pay for loss or damage caused <u>directly or indirectly</u> by any of the following. Such loss or damage is excluded <u>regardless of any other cause or event that contributes concurrently or in any sequence to the loss</u>.

(Emphases added.)  The emphasized language in this exclusion and other similarly worded exclusions in the Policy does not appear in the exclusion for loss or damage caused by "[d]elay, loss of use or loss of market."  <u>See</u> <u>supra</u>.  In context, a reasonable reading of this omission is that the phrase "caused by or resulting from . . . loss of use" is <u>not</u> intended to cover situations in which loss of use is an "indirect" cause of loss or damage, or where the loss of use acts concurrently with or in sequence with a covered cause.

Here, Tiki's presented evidence that the suspension of its operations was directly caused by the imposition of a physical barrier that deprived Tiki's of physical access to its leased space.  If such causation is proven, the imposition of the barrier could be considered a covered cause of loss (<u>see</u> <u>supra</u>), and the loss of use of Tiki's space could be considered an indirect cause of loss that would not trigger the loss-of-use exclusion to bar coverage.  In other words, construed in favor of the insured, the loss-of-use exclusion would be triggered only when loss of use is <u>the cause</u> of loss.  Given this construction, DTRIC did not establish that the Policy's loss-of-use exclusion precluded coverage of Tiki's claimed loss as a matter of law.

DTRIC also relies on the following language in the Policy's separate Virus Exclusion as precluding coverage of the claimed loss:

> **B.**    We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

Like the similarly worded phrase in the loss-of-use exclusion, the phrase "<u>caused by or resulting from</u> any virus" is

23

ambiguous, when the Policy is viewed as a whole. (Emphasis added.) The Virus Exclusion likewise omits the language of other exclusions, emphasized in the example above, that further modifies the terms "caused by or resulting from." In context, a reasonable reading of this omission is that the phrase "caused by or resulting from any virus" is <u>not</u> intended to cover situations in which a virus is an "indirect" cause of loss or damage, or where a virus acts concurrently with or in sequence with a covered cause.

Here, again, Tiki's presented evidence that the suspension of its operations was directly caused by the imposition of a physical barrier that blocked its access to its leased space. Based on the same reasoning we applied to the loss-of-use exclusion (<u>see</u> <u>supra</u>), we conclude that DTRIC did not establish that the Policy's Virus Exclusion precluded coverage of Tiki's claimed loss as a matter of law.

## IV.  Conclusion

For the reasons discussed above, we vacate the Circuit Court's January 25, 2022 "Order Granting DTRIC Insurance Company, Limited's Motion for Summary Judgment" and January 26, 2022 Final Judgment. This case is remanded to the Circuit Court for further proceedings consistent with this Opinion.

On the briefs:

James J. Bickerton
(Bickerton Law Group)
for Plaintiff-Appellant

Richard B. Miller and
David R. Harada-Stone
(Tom Petrus & Miller, LLLC)
for Defendant-Appellee

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge